## Ivan R. Schaffner, Sr. v. Department of Employment Security

[436 A.2d 743]

No. 168-80

Present: Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.

Opinion Filed September 1, 1981

*Donald L. Rushford, Joseph M. Kraus,* and *Francis J. Constantine,* Law Clerks (On the Brief), Rutland, for Central Vermont.

*Matthew R. Gould,* Montpelier, for Department.

**Barney, C.J.** This is an appeal from a decision of the Employment Security Board holding that the employee, Ivan Schaffner, Sr., was eligible for unemployment benefits. The company claimed that he was discharged for misconduct related to his work, and that he thus should be disqualified for benefits under 21 V.S.A. § 1344(a)(1). The Board held that his activities did not constitute misconduct, and upon that basis, awarded the claimant his benefits. The company appealed, and the Board certified the following question to this Court:

> Whether the conclusion of the Vermont Employment Security Board that the employer had failed to demonstrate that the claimant had violated safety rules as alleged and, therefore, had failed to demonstrate that the claimant was discharged for misconduct connected with his work is supported by the record and correct as a matter of law.

Schaffner was employed as a journeyman lineman for nine years by the Central Vermont Public Service Corporation, the appellant in this case. Throughout the course of his employment he was involved in several unfortunate mishaps which resulted in damage to the company's property and potential harm to himself. A chronology of the incidents follows.

In June, 1973, as Schaffner was driving a company truck across a narrow bridge in Chester, Vermont, the mirror on his truck hit the mirror of a truck coming the other way. The mirrors on both trucks were broken, but there was no other damage. A year later he backed a truck over a fire hydrant. The company claims he violated a safety rule requiring him to walk around his truck to check for obstructions before backing up.

In the summer of 1975, the claimant put his hand into a chipping machine to retrieve a fallen wrench. He did so without turning the machine off, and injured his arm. This action was a violation of a company safety rule requiring that the machine be shut down before working on it.

In November, 1977, he accidentally lowered the bucket attached to the boom of a truck onto a power line. The hydraulic line ruptured, starting a fire which destroyed the truck. No one was hurt. In January, 1978, he backed a pickup truck out of the company's Woodstock service center and hit a line truck. As a result he was demoted and his driving privileges were suspended for two months. Three months later, in a controversial incident, the clutch on a truck he was driving burned out. The company claims that he drove the truck down a hill without the clutch engaged, but he denies this.

The final mishap occurred in September, 1979. Schaffner was to transfer a primary line from a telephone company pole. He told his crew chief that he did not think that the bucket on his truck would be able to reach the pole involved. The chief disagreed, so Schaffner moved the truck into position. To do so he had to park it on a fairly steep grade, straddling a ditch. After the chief demonstrated the bucket would reach, Schaffner got into the bucket and started the necessary work. He transferred the lines, then lowered the bucket to pick up a drill. In doing so, he brought the bucket down over the right front quarter of the truck. The company claimed that this violated a safety procedure, although it did

not cite any section of its safety manual. Its safety director testified that employees simply had been told that the trucks are most unstable when the bucket is lowered over a front quarter. As a result of the claimant's lowering the bucket in this way, the shoulder of the road under the right front wheel gave way and the truck overturned.

After this last incident, the company discharged Schaffner. He applied for unemployment benefits. The claims examiner allowed his claim, and so did the Employment Security Board.

The company argues that Schaffner should be denied unemployment compensation under 21 V.S.A. § 1344(a)(1). At the time of his discharge, § 1344(a)(1) provided:

> An individual shall be disqualified for benefits:
>
> (1) When he has been discharged by his last employing unit for misconduct connected with his work, if so found by the commissioner, . . . .

The company attempted to rely upon violation of alleged company safety rules as a basis for the discharge for misconduct. In several of the instances, however, the company did not even prove that such rules existed; rather, there were references to general oral instructions. The Board concluded that, although the series of incidents demonstrated negligence sufficient to justify a discharge, they did not reflect a wilful or culpably negligent disregard of the employer's business interests. The company claims error in that conclusion.

■■ In deciding this case, we must keep in mind two considerations. Under § 1344(a)(1), it is the commissioner who is delegated the duty to determine whether the employee was discharged for misconduct, so that "[o]ur review of the matter can overturn the result . . . only when the established facts do not support the result reached, or compel a different result as a matter of law." *In re Gray*, 127 Vt. 303, 305, 248 A.2d 693, 695 (1968). In addition, we have said many times that the unemployment compensation statutes, as remedial legislation, should be interpreted in line with their benevolent purposes.

No one challenges the company's right to fire the petitioner in this case. The issue is simply whether his conduct consti-

tuted "misconduct" for purposes of unemployment compensation.

In a policy statement the Department has defined misconduct as "an act or course of conduct in violation of the employee's duties, which is tantamount to an intentional disregard of the employer's interests." IB Unempl. Ins. Rep. (CCH) ¶ 8146, at 48,528 (1968). This is in keeping with our cases interpreting § 1344(a)(1). *Porter* v. *Department of Employment Security*, 139 Vt. 405, 430 A.2d 450 (1981); *Johnson* v. *Department of Employment Security*, 138 Vt. 554, 420 A.2d 106 (1980).

A key factor when determining whether a discharged employee should be disqualified from receiving unemployment benefits is that the conduct be tantamount to an *intentional* disregard of the employer's interests. Here, that ingredient is missing. Although the employee was involved in several accidents, his conduct, taken individually and as a whole, cannot be said to amount to conduct tantamount to that necessary intentional disregard for the company's interests. In many of the instances, his own life was at stake. His conduct may have constituted negligence, but that alone will not support a finding of misconduct sufficient to bar his receiving benefits. As we have said, "Misconduct that is sufficient for discharge is not necessarily sufficient to require a disqualification from benefits under the Unemployment Compensation Act." *Johnson* v. *Department of Employment Security, supra,* 138 Vt. at 556, 420 A.2d at 107.

The Board concluded that the claimant's conduct did not reflect a wilful or culpably negligent disregard of the claimant's interests. Given the record before the Board, that conclusion is supportable.

*The certified question is answered in the affirmative.*