# Dennis G. Favreau v. Department of Employment and Training

[557 A.2d 909]

No. 87-088

Present: Allen, C.J., Peck, Gibson and Dooley, JJ., and Keyser, J. (Ret.), Specially Assigned

Opinion Filed February 17, 1989

*Sheila Reed* and *Jean V. Lowell, Paralegal (On the Brief)*, Vermont Legal Aid, Inc., St. Johnsbury, for Plaintiff-Appellant.

*Brooke Pearson*, Montpelier, for Defendant-Appellee.

*Philip J. Fitzpatrick*, Jeffersonville, for Defendant-Appellee Employer.

**Allen, C.J.** Claimant Dennis Favreau appeals from an order of the Vermont Employment Security Board (Board) disqualifying him from unemployment benefits. The Chief Appeals Referee held, and the Board affirmed, that the claimant had been discharged by his last employer for "misconduct connected with his work" and was therefore disqualified from unemployment bene-

fits in accordance with 21 V.S.A. § 1344(a)(1)(A). We affirm the Board's decision.

Prior to seeking the unemployment compensation benefits at issue, claimant was employed as a brass polisher at the House of Troy in North Troy, Vermont. His employment there lasted approximately twenty months. On August 26, 1986, in response to an incident occurring five days earlier, claimant was discharged from employment. The events leading up to claimant's discharge are as follows.

While employed at the House of Troy, claimant was involved in two incidents allegedly constituting misconduct. On August 8, 1986, while on break, claimant was involved in an argument with a fellow worker over a ride to the upcoming employer's picnic. The claimant had been bargaining with his co-worker for transportation to and from the picnic. Upon being informed by his co-worker that there would be an additional fee for transporting claimant's wife, claimant made several hostile remarks both to his co-worker and the other employees present and then left. While walking up the road, he tore up some shrubbery and knocked over a bicycle. After the break was over, however, claimant resumed work. In response to the August 8th occurrence, the employer warned the claimant that any further "temper tantrums" by claimant would result in his dismissal.

The incident leading to claimant's dismissal occurred less than two weeks later. On August 21, 1986, Danny Allen, a substitute production manager for the day, heard screaming coming from claimant's work area. He immediately investigated and found claimant kneeling on the floor with a Bible held against his head.

Claimant's outburst occurred in response to rock music played by a co-worker containing lyrics that the claimant found offensive. The claimant tried to ignore the music by placing cotton in his ears. His co-worker, however, continued to play the music with more repetition and at a louder volume than before. The music had been playing from at least 12:30 in the afternoon, and the claimant had his outburst shortly before 3:00 p.m. Not until a half an hour later was Mr. Allen able to calm claimant down. The incident frightened claimant's co-workers.

Mr. Allen and claimant had a friendly relationship prior to the incident. Even though Mr. Allen was at work and available to the claimant on August 21, claimant did not report his concern over the music or request help at any time before the outburst. After

investigating this incident, claimant's employer made the decision to discharge him.

On appeal, claimant challenges the Board's conclusion that his behavior constituted work-related misconduct sufficient to disqualify him from unemployment compensation benefits. Claimant argues that it was error for the Board to conclude that he acted with culpable negligence and in substantial disregard of his employer's interests while at the House of Troy.

Section 1344 of Title 21 disqualifies individuals from benefits if they have been discharged from employment for work-related misconduct.[1] "In determining whether an employee's conduct constitute[s] misconduct connected with his work, . . . a separate evaluation in the light of the remedial and beneficial purposes of the Unemployment Compensation Act must be conducted." *Cross v. Department of Employment & Training*, 147 Vt. 634, 635, 523 A.2d 1247, 1249 (1987).

■ To be disqualified from benefits, an employee's misconduct must be in substantial disregard of the employer's interest, his disregard being either willful or culpably negligent. *Strong v. Department of Employment & Training*, 144 Vt. 128, 130, 473 A.2d 1170, 1172 (1984); *Porter v. Department of Employment Security*, 139 Vt. 405, 410, 430 A.2d 450, 453 (1981); *Johnson v. Department of Employment Security*, 138 Vt. 554, 555, 420 A.2d 106, 107 (1980). In the past, we have defined culpable negligence as the " '[f]ailure to exercise that degree of care rendered appropriate by the particular circumstances, and which a man of ordinary prudence in the same situation and with equal experience would not have omitted.' " *Porter*, 139 Vt. at 411, 430 A.2d at 454 (quoting Black's Law Dictionary 931 (5th ed. 1979)). To be substantial enough to trigger disqualification from benefits, culpable negligence must involve more than "[m]ere mistakes, errors in judgment, unintentional carelessness or negligence." *Id.*

---

[1] The relevant disqualifying provisions in § 1344 read:

(a) An individual shall be disqualified for benefits:

(1) For not more than 12 weeks nor less than 6 weeks immediately following the filing of a claim for benefits (in addition to the waiting period) as may be determined by the commissioner according to the circumstances in each case, if the commissioner finds that:

(A) He has been discharged by his last employing unit for misconduct connected with his work.

The Board concluded that the claimant did not intend his behavior on August 21 to interfere with his employer's business interests. According to the Board, even though claimant's conduct was not willful, he still acted in a culpably negligent manner towards his employer. The Board based its conclusion on the facts that "claimant had recently been warned about temper tantrums at work and that he had ample opportunity to bring his concerns and distress to the attention of [his] employer but failed to do so before losing control of himself."

Claimant challenges the Board's determination of culpable negligence as well as certain facts found in support of it. He first takes issue with the Board's finding that characterized his actions on August 21 as "another tantrum." Claimant argues that this finding is not supported by the evidence.[2] This Court will not disturb the Board's findings if there is any credible evidence to support them even when substantial evidence to the contrary exists. *Strong*, 144 Vt. at 129-30, 473 A.2d at 1171; *Johnson*, 138 Vt. at 555, 420 A.2d at 107.

The record here contains credible evidence to support the Board's finding that claimant had a "tantrum" on August 21. Mr. Allen testified that on that day he found claimant in his work area kneeling on the floor with his head down on a table screaming something about the devil. The claimant's testimony also described the incident to include falling to the floor and screaming. Accordingly, the Board's finding will not be disturbed.

Claimant next challenges the Board's finding that he had "ample opportunity" to bring his distress to the attention of Mr. Allen. The basis for this contention is that there was no hearing testimony to support the Board's finding that his co-worker was also playing the music in question during the morning of the incident. According to the claimant, this finding may have left the Board with the mistaken impression that he had more opportunity to report his concerns to his supervisor than he actually did.

Because we find credible evidence in the record to support this finding, as well, we will leave it undisturbed. Such evidence includes testimony by Mr. Allen that he was in charge of the plant on the day of the incident, that in the past claimant and Mr. Allen had gotten along well, and that during the period of time im-

---

[2] According to claimant's brief, the evidence supports a finding that claimant had an "anxiety attack" instead of a tantrum.

mediately preceding his outburst, Mr. Allen was in the spray room close by. From this evidence, we think the Board could have inferred that claimant had ample opportunity to notify his supervisor of his concerns.

While it is unclear from the evidence whether the music was played in the morning, there was still a period in excess of two hours prior to claimant's outburst in which he could have sought help. In light of this time period, the Board was still justified in its determination that the claimant had ample opportunity to report his concerns and was therefore culpably negligent.

Claimant next contends that his behavior while employed at the House of Troy did not amount to employment-related misconduct sufficient to disqualify him from benefits. We disagree. One may be disqualified from unemployment compensation benefits for repeated insubordination after receiving a direct warning from the employer. *Cross*, 147 Vt. at 636, 523 A.2d at 1249. The plaintiff in *Cross*, a stock clerk for a drug company, was discharged for using foul language liberally while at work. In response to his behavior, some of plaintiff's co-workers would leave the area while he was stocking shelves and return when he was finished. Because the offense was repeated by plaintiff after a warning from his employer, contravened published company policy and had the effect of influencing the work patterns of his co-workers, we held that plaintiff's behavior constituted work-related misconduct, thereby disqualifying him from unemployment compensation benefits. *Id.*

As in *Cross*, the claimant here received a warning that another tantrum would result in his discharge. Claimant's behavior also had the effect of frightening his co-workers. Since these facts provide sufficient support for the Board's conclusion that claimant acted with culpable negligence and in substantial disregard of his employer's interest, we affirm the Board's decision disqualifying claimant from benefits. *Schaffner* v. *Department of Employment Security*, 140 Vt. 89, 92, 436 A.2d 743, 745 (1981) (" 'Our review of the matter can overturn the result . . . only when the established facts do not support the result reached, or compel a different result as a matter of law.' ") (quoting *In re Gray*, 127 Vt. 303, 305, 248 A.2d 693, 695 (1968)).

Claimant's final argument that he did not "intentionally" disregard his employer's interests and should therefore not be disqualified from receiving benefits is without merit. To be dis-

qualified from unemployment compensation benefits, an individual must act in substantial disregard of his employer's interest, either wilfully or with culpable negligence. *Strong*, 144 Vt. at 130, 473 A.2d at 1172. There is no separate requirement that the disqualifying behavior be intentional.

The cases claimant relies on do not support his argument. In *Porter*, this Court held that the actions of a nurse in giving a medication by a method of administration contrary to hospital policy did not amount to misconduct sufficient to disqualify her from unemployment compensation benefits. *Porter*, 139 Vt. at 413, 430 A.2d at 455. The "willful or culpably negligent" standard was applied to the facts at issue. *Id.* at 412, 430 A.2d at 454. That holding does not require that a claimant's behavior in disregard of the employer's interests be intentional in order to disqualify one from benefits.

In *Schaffner* we also relied on the "willful or culpably negligent" standard when determining the claimant's eligibility for unemployment compensation benefits. We upheld the Board's conclusion that the claimant's involvement in a number of accidents while at work did not constitute a willful or culpably negligent disregard of his employer's interests. *Schaffner*, 140 Vt. at 93, 436 A.2d at 746. As in *Porter*, the decision did not condition the disqualification from benefits under § 1344 (a)(1)(A) on a determination that claimant intentionally disregarded the employer's interests.

*Affirmed.*

**Gibson, J.,** dissenting. I respectfully dissent. Although the facts set forth in the majority opinion are accurate as far as they go, some additional facts should be noted in order to place the matter in perspective.

Claimant Dennis Favreau has had a history of emotional problems. He was hired through an on-the-job training and employer-incentive program coordinated by Vocational Rehabilitation Services and SET Industries, a private firm specializing in the placement and training of disabled clients. During the early months of his employment, he engaged in some religious proselytizing, and was asked by his employer to cease that activity. He did so.

On the afternoon of the incident in question, an employee working "side by side" with claimant began playing rock music in

a manner that was upsetting to claimant. Although it is not clear whether the music was played in the morning, there is no dispute that the aggravation occurred in the afternoon, when the volume was turned up "full blast, as loud as you could get it so that it was heard all over the shop." Claimant was upset by the loud volume of the music, the anti-religious lyrics, and the constant repetition. The co-worker had played the same music in the past, although not as loudly or as repetitiously.

When claimant put cotton in his ears in an effort to mute the sound, the co-worker thought it amusing and laughed at him. Eventually, the volume was turned down, and claimant thought things would be all right. During the afternoon break, which began at 2:30 p.m., the co-worker stopped playing the music altogether. After the break, however, the co-worker resumed playing the music as before. In an effort to calm himself, claimant began reading the Bible, and it was at this point that he became dizzy, fell down and let out a scream.

The Employment Security Board (Board) found that claimant's actions were not willful, and, indeed, the evidence indicated that he intended no harm to the employer's business. The Board did, however, find claimant's behavior to be in "substantial disregard" of his employer's business interests, concluding that claimant had been culpably negligent in not bringing the problem to his employer's attention and seeking relief in this manner.

There is no question but that such an approach would have been appropriate and might have solved the problem. The evidence indicates, however, that claimant thought he could solve the problem himself, and he attempted to do so, first, by placing cotton in his ears, and later, by reading the Bible to himself. He had reason to believe that things had improved, because the co-worker had turned the music down prior to the break and then did not play it at all during the break. Claimant's outcry came just a few minutes after the break had ended — apparently a spontaneous outburst in response to the renewed provocation by his co-worker.

As this Court has stated, "[m]ere mistakes, errors in judgment, unintentional carelessness or negligence are not acts of misconduct sufficient to disqualify a claimant for unemployment benefits, though they may very well be acts of misconduct warranting discharge of the employee." *Porter* v. *Department of Employment Security*, 139 Vt. 405, 411, 430 A.2d 450, 454 (1981); see also

*Johnson* v. *Department of Employment & Training*, 146 Vt. 418, 419, 505 A.2d 670, 671 (1985) (poor judgment in not reporting to work one day, in light of prior excellent work record, did not justify disqualification for unemployment benefits). Claimant's failure to consult with his employer amounted, at most, to an error in judgment — unintentional negligence, perhaps, but not culpable negligence.

"Unemployment legislation is remedial in nature and entitled to a liberal construction and interpretation. The underlying purposes are to remove economic disabilities and distress resulting from involuntary unemployment, and to assist those workers who become jobless for reasons beyond their control." *Anthony Adams AIA Architect* v. *Department of Employment Security*, 139 Vt. 413, 414, 430 A.2d 446, 447 (1981) (citations omitted). Claimant's conduct must be evaluated in light of the legislative purposes. The facts herein disclose no insubordination and no substantial disregard of the employer's interests. If anyone was guilty of such conduct, it would be the co-worker, whose deliberate provocation of claimant interfered with claimant's ability to perform his job.

This case is different from *Cross* v. *Department of Employment & Training*, 147 Vt. 634, 523 A.2d 1247 (1987), cited in the majority opinion. In *Cross*, the Court reversed the Board, concluding, based on the Board's findings, that the plaintiff's "insubordination was a repeated offense" when he continued to use foul language after he had been warned that further use of profanity would not be tolerated. *Id.* at 636, 523 A.2d at 1249. In the instant case, the evidence indicates that claimant's action was not a willful repetition of a temper tantrum, but rather a frustrated, involuntary response to an intolerable situation which he had reason to think had ended or at least abated.

The employer in this case chose to blame the victim. The employer's right to do so does not mean that we must compound the inequity by denying the victim the economic security of unemployment compensation. If our policy of liberal construction in favor of eligibility, see *Seyfried* v. *Department of Employment Security*, 136 Vt. 357, 359, 392 A.2d 401, 402 (1978), means anything, we cannot countenance a disqualification in such a situa-

tion. I therefore dissent, I am authorized to say that Justice Dooley joins in this dissent.