## Marylu Haynes v. Golub Corporation, et al.

[692 A.2d 377]

No. 95-444

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 31, 1997

*Leighton C. Detora* of *Valsangiacomo, Detora & McQuesten, P.C.*, Barre, for Plaintiff-Appellee.

*Robert H. Claridge*, Schenectady, New York, and *John J. Boylan, III* of *Boylan & Bowen*, Springfield, for Defendants-Appellants.

**Dooley, J.** Defendant Golub Corporation* appeals from a $175,000 jury verdict finding that defendant had wrongfully discharged plaintiff, Marylu Haynes. Defendant raises four claims of error: (1) there was insufficient evidence to support the jury's finding that plaintiff was fired without sufficient cause; (2) evidence regarding a promise to retransfer plaintiff to her backdoor receiver position was erroneously admitted; (3) the jury instructions on reducing damages for future wages to present value misled the jury and require a new trial on damages; and (4) the trial court erred in failing to grant a remittitur or, in the alternative, a new trial on damages because the jury award was excessive. We affirm in part and reverse in part.

---

*Defendants Golub Corporation and Price Chopper Operating Company of Vermont, Inc. are referred to collectively in this opinion as "defendant."

Plaintiff was a long-time employee of a grocery store first owned by Martin's, then by P & C, and finally by defendant, which operated it as Price Chopper, Inc. Defendant retained plaintiff as an employee and granted her sixteen years of seniority for her years of employment with the former owners.

Plaintiff began as a backdoor receiver, the same position she had with P & C. As a receiver, plaintiff kept the back room clean, took care of any damage, and checked in inventory items that came into the store. She continued to work as a backdoor receiver until a new store manager decided to transfer her to the deli department. Plaintiff resisted the transfer, explaining to the manager that she understood that the deli supervisor was a difficult person to work under. Plaintiff finally agreed to the transfer on the condition that if it did not work out, she would be able to return to her original receiver position. The manager agreed to the condition and put it in writing.

Another employee expressed surprise about the transfer to the manager because everyone knew that plaintiff did not get along with the deli manager. Moreover, the deli department was busy and understaffed. When the employee asked the manager about the transfer, he replied with a muffled laugh, "We'll see which one of them goes out the door first."

After some time in the deli department, plaintiff requested to be returned to her receiver position. The manager replied to the effect that if plaintiff went back to her receiver position, she would end up being fired within two weeks. Somewhat intimidated by the manager's remarks, plaintiff remained at her deli position. Subsequently, she was disciplined on three occasions. The latter two incidents became the basis of her termination.

The first incident involved the use of abusive language. Plaintiff was written up for swearing at a co-worker. The second alleged act of misconduct occurred on December 4, 1991 when plaintiff was disciplined for acting rudely towards a customer who requested a complimentary cup of coffee. The store manager recorded the violation, reporting in writing: "[c]ustomer asked [plaintiff] for free cup of coffee and [plaintiff] ignored and was rude when he asked her for the coffee — customer felt he was intruding and was upset after I personally told him that free coffee was available at deli." For this infraction, plaintiff received a three-day suspension and a warning that in the event of further infractions she would be terminated.

In January, the deli supervisor told another employee that the store management was looking for a way to "get rid of" plaintiff. The

supervisor complained that plaintiff's presence in the deli department was requiring her to cut the hours of part-time workers to pay plaintiff's salary as a long-tenured employee. To a different employee, the supervisor described plaintiff as the most highly paid deli employee and part of the reason the deli was losing money.

On January 16, 1992, plaintiff was again disciplined for rude conduct toward a patron. A customer complained that plaintiff had been rude and had thrown cold cuts of meat at her. The store manager again documented this incident on the appropriate form, but plaintiff refused to sign and verify the complaint. On the basis of this alleged violation of store policy, defendant terminated plaintiff on January 23, 1992.

Plaintiff brought this wrongful discharge action in May 1992. She claimed that her at-will employment relationship was modified by defendant's policy to terminate employees only for just cause. She disputed that either of the disciplinary incidents occurred as charged. She alleged that she was set up for failure by the transfer to the deli department because of the personal animus of the manager and her status as a long-term employee with a relatively large salary.

Plaintiff also claimed two violations of specific personnel policies in the decision to discharge her. First, plaintiff argued that defendant's employee handbook required four misconduct citations to support termination, and only three had occurred. Second, she argued that the handbook provided extra procedural protection for employees with five or more years of experience, that the proposed termination would be "automatically . . . reviewed" by the company president, and that that had not occurred.

The case was tried to a jury in November 1994. Following the presentation of evidence, the trial court held a jury charge conference. Defendant agreed to jury instructions on just cause for termination and also to instructions that the jury had to determine whether the proffered reasons for plaintiff's termination were pretextual. Defendant objected, however, to the trial court's instructions on future damages. Both defendant and plaintiff agreed to submit the following interrogatories for the jury to answer:

1. Was there an employment contract which required just cause for discharge?
2. If your answer is YES, was the Plaintiff discharged without just cause?

3. Aside from the just cause discharge question, was there a substantial breach of contract of employment by Defendant in the manner and means of discharge?
4. If your answer to questions 1 and 2 were yes, or your answer to question 3 was yes, what damages, if any, were proximately caused by the breach of contract?
5. Do you award punitive damages?

The jury chose to believe plaintiff's version of the events. It found that (1) plaintiff could be terminated only for just cause, (2) plaintiff was discharged without just cause, and (3) defendant breached its contract in the manner and means of discharge. As a result, the jury awarded plaintiff compensatory damages in the amount of $175,000. No punitive damages were awarded.

Following the verdict, defendant moved for judgment notwithstanding the verdict. It also moved for a new trial on liability on the basis that irrelevant evidence was erroneously admitted and on damages because of an error in the jury instructions. It requested that the court order a remittitur or, in the alternative, a new trial on damages because the jury award was excessive. The trial court denied all of defendant's motions.

■ Defendant first contends that the trial court erred in failing to grant its motion for judgment as a matter of law made after the verdict on plaintiff's wrongful discharge and breach-of-implied-contract claims. The motion for judgment as a matter of law is the successor to the motion for a directed verdict and the motion for judgment notwithstanding the verdict. See V.R.C.P. 50. Although the terminology has changed, the applicable standard has not. See Reporter's Notes to 1995 Amendment, V.R.C.P. 50. Thus, on review of a motion for judgment as a matter of law, we must determine "'whether the result reached by the jury is sound in law on the evidence produced.'" *Nadeau v. Imtec, Inc.*, 164 Vt. 471, 475, 670 A.2d 841, 844 (1995) (quoting *Foote v. Simmonds Precision Prods. Co.*, 158 Vt. 566, 570, 613 A.2d 1277, 1279 (1992)). We view the evidence in the light most favorable to the nonmoving party and exclude the effect of any modifying evidence. *Id.* We will uphold the trial court's denial of the motion if any evidence fairly or reasonably supports a lawful theory of the plaintiff. *Id.*

Defendant's position on appeal is that there was just cause to terminate plaintiff as a matter of law. In reaching this conclusion, defendant argues the standard is not whether plaintiff committed the

acts that resulted in her termination, but instead whether "the employer reasonably believed the facts to be true and whether they were supported by substantial evidence." Defendant claims that, as a matter of law, it met this standard.

It is helpful to put this position in the context of wrongful termination law in this state. In *Taylor v. National Life Ins. Co.*, 161 Vt. 457, 464, 652 A.2d 466, 471 (1993), we held that although an employment contract is normally "at will," terminable at any time for any reason, personnel manual provisions inconsistent with an at-will relationship may be used as evidence that the contract requires good cause for termination. We found that manual provisions committing the employer to a progressive discipline system were sufficient for a jury to find that the employment contract restricted defendant to terminating plaintiff only for cause. *Id.* at 465, 652 A.2d at 471. We have followed *Taylor* in more recent decisions. See *Clement v. Woodstock Resort Corp.*, 165 Vt. 627, 627, 687 A.2d 886, 887 (1996); *Madden v. Omega Optical, Inc.*, 165 Vt. 306, 310, 683 A.2d 386, 389 (1996); *Farnum v. Brattleboro Retreat, Inc.*, 164 Vt. 488, 494-95, 671 A.2d 1249, 1254-55 (1995); *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 18-21, 665 A.2d 580, 583-84 (1995); *Baldwin v. Upper Valley Servs., Inc.*, 162 Vt. 51, 54-55, 644 A.2d 316, 318 (1994).

In its interrogatory, the jury found that there was an employment contract in this case "which required just cause for discharge." This finding was supported primarily by provisions of defendant's employee handbook and the testimony of defendant's human resources specialist. Defendant has not attacked it on appeal. Instead, defendant's attack is on the jury finding that it breached the contract.

In explaining its attack, defendant argues that the jury cannot second-guess its termination decision, but must give deference to defendant's decision if it is made in good faith and supported by substantial evidence. The problem with this argument is that the trial court did not charge this standard to the jury. Instead, the court charged:

> Now, a breach of contract is merely a failure to perform as promised. A party is entitled to the benefits of their bargain. That is, each is entitled to rely on the agreement reached by the parties either expressly or impliedly in performing their obligations that they're promised, expressly or impliedly.

The standard was summarized in the jury interrogatory, which asked, "was the Plaintiff discharged without just cause?" There was nothing in the charge or interrogatory suggesting that the jury was to defer

to defendant's view of whether there was just cause. Defendant did not object to the charge or the interrogatory. See V.R.C.P. 51(b) (party may not assign giving of instruction as error unless party objects before jury retires).

Although defendant did seek a judgment as a matter of law below, its position there was somewhat different from its position here. In the trial court, it argued that under *Taylor* plaintiff was required to prove that the reasons given for the termination were a pretext. Here, defendant has shifted to insistence on the reasonable-belief and substantial-evidence standard.

■ Where the trial court proceeds upon a theory of the case, and the theory is acquiesced in by the parties, the theory becomes the law of the case. See *Gregoire v. Insurance Co. of N. Am.*, 128 Vt. 255, 261, 261 A.2d 25, 29 (1969). The theory defendant now posits was not placed before the trial court for it to act upon. It would be inappropriate to consider it here. See *MacDonald v. Roderick*, 158 Vt. 1, 4, 603 A.2d 369, 371 (1992).

The situation in this case is similar to that in *Farnum*, a wrongful discharge case in which the defendant also argued for the first time in this Court that the jury should have deferred to the "employer's reasonable determination that it had good cause to discharge an employee." 164 Vt. at 495 n.*, 671 A.2d at 1255 n.*. We held the issue was not preserved, and affirmed the denial of a judgment as a matter of law using the legal standard charged to the jury, rather than the standard sought by the employer. See *id.* at 495-96, 671 A.2d at 1255-56.

■ If we apply the standard used by the jury, we have no trouble in affirming the verdict as supported by the evidence. Plaintiff denied both of the incidents that ostensibly led to her termination. Thus, the jury could have reasonably believed that plaintiff did not engage in misconduct or that the misconduct did not warrant termination. See *id.*; *Clement*, 165 Vt. at 628, 687 A.2d at 888.

Next, defendant argues that the trial court committed reversible error by allowing testimony that its store manager had broken his promise to plaintiff that she could return to her backdoor receiver position upon request. Defendant contends that the testimony on the breach of the promise was irrelevant and confused the jury into believing that plaintiff had a compensable claim for wrongful transfer. The trial court admitted the testimony, stating that "it may be a circumstance surrounding the whole situation." The court revisited

the ruling in response to defendant's new trial motion, stating the "evidence was . . . relevant on the issue of the whole surrounding background supporting the claim of pretext."

■ Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." V.R.E. 401. The trial court has broad discretion in determining the relevance of any evidence. See *Ball v. Melsur Corp.*, 161 Vt. 35, 42, 633 A.2d 705, 711 (1993). One of plaintiff's theories was that defendant's proffered reasons for the termination were pretextual, and the real reasons for the manager's actions were personal dislike of plaintiff and her high salary based on her seniority. Under the broad definition of V.R.E. 401, the court could find the evidence relevant to plaintiff's pretext theory. It supported plaintiff's view that she was set up for failure and purposely kept in the deli when it became clear that failure was imminent.

■ We recognize that there was some risk that the jury would misuse the evidence to award damages because defendant breached the agreement to transfer plaintiff back to her original position. We see this as a question of whether the probative value of the evidence was substantially outweighed by the danger of misleading the jury. See V.R.E. 403. Again, the trial court had broad discretion in making its ruling, and we review only for abuse of that discretion. See *Quirion v. Forcier*, 161 Vt. 15, 21, 632 A.2d 365, 369 (1993). The trial court in this case was aware of the risk and considered it. We see no abuse of discretion. We also note that defendant could have requested a limiting instruction to reduce the risk of juror misuse of the evidence, but failed to do so. See *State v. Robinson*, 158 Vt. 286, 293, 611 A.2d 852, 856 (1992).

Next, defendant argues that the jury instruction on reducing plaintiff's damage award to present value was so confusing and misleading that a new trial on damages is warranted. The charge given was as follows:

> If, in your deliberations, you find dollar value for future damages, that is from the present into the future, the plaintiff . . . must prove that by fair preponderance of the credible evidence. But if you do find that future damages have been proved, that you may find them without excessive speculation from the evidence, you must then find the present cash value of such amount and award only the

present cash value of such future damages. Present cash value is determined by methods of discounting the future value to the present. It is the present sum of money which you may calculate, together with what the money may reasonably be expected to earn in the future — for the period and extent that you determine when and if future damages are to be awarded — considering what the present amount of money would earn in the future for the period which you determined that such loss will be suffered. And that amount presently invested at a reasonable rate of return, what will it produce in dollar equivalent to pay such future damages when it accrues. In other words, in determining the amount you award for future damages, if any, you must ascertain the amount that would be made if that investment continues until the projected time of the suffering of damage.

We have upheld use of a standard and general charge on reducing future awards to present value. See *Debus v. Grand Union Stores of Vt.*, 159 Vt. 537, 542, 621 A.2d 1288, 1291-92 (1993).

 A jury charge is not erroneous if, read as a whole, it breathes the true spirit and doctrine of the law. See *Rooney v. Medical Ctr. Hosp. of Vt., Inc.*, 162 Vt. 513, 519, 649 A.2d 756, 759 (1994). To secure a new trial, the appellant must show that the charge is both erroneous and prejudicial. See *Debus*, 159 Vt. at 542, 621 A.2d at 1292. We agree that this charge is not a model of clarity and that it may have confused the jury. We conclude, however, that any prejudice resulting from that confusion is adequately addressed by our decision to require a remittitur or a new trial.

Finally, defendant contends that the amount of compensatory damages awarded by the jury, $175,000, was excessive, and that the trial court erred in denying its motion for a new trial on damages or, in the alternative, a remittitur. The only evidence on damages was the relatively brief testimony of plaintiff and an exhibit summarizing her claim. Plaintiff testified that she had eight more years to retirement when she was terminated. She further testified that at the time of trial she was working at two part-time jobs with low pay rates and no benefits. Based on this testimony, plaintiff's counsel prepared an exhibit that showed (1) the gross wages and benefits plaintiff would have received if she continued to work for defendant, (2) her actual income since the termination and a projection of her expected income

until her retirement, and (3) the difference, totaling $140,503. In his closing argument, plaintiff's counsel argued for an award of $140,000 to restore plaintiff's income in the "eight years left to retirement." The court charged the jury that they could award damages for future income losses, and defendant did not object to this charge.

█ In seeking compensatory damages, plaintiff sought both back pay and front pay. Back pay consists of wages lost up until the time of judgment, and front pay covers lost future wages. Defendant has not contested the award of front pay damages generally, and therefore, we need not decide whether front pay is a proper element of damage in a breach-of-contract case. Other jurisdictions are not unanimous on this issue. Compare *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 662 A.2d 89, 106 (Conn. 1995) (future lost wages are recoverable for breach of implied contract of employment) with *Sterling Drug, Inc. v. Oxford*, 743 S.W.2d 380, 386 (Ark. 1988) (front pay damages not recoverable in wrongful discharge case because they are "too speculative and uncertain"). When front pay is allowed, the damages must be limited to a reasonable period of time, see *Torosyan*, 662 A.2d at 106, and the amount must not be speculative. *Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 688 (Iowa 1990).

█ We conclude that the award of front pay in this case was too speculative because it exceeded the amount claimed by plaintiff, who requested damages based on a normal retirement age of sixty-five years. The trial court defended the amount on the theory that the jury could have determined that she would have worked beyond the normal retirement age of sixty-five years and awarded future wages on that basis. We agree that the jury could find that it would be reasonable to award damages for future wages for the period between the trial and plaintiff's normal date of retirement. Plaintiff had been a long-term employee at the store, and the time to retirement was relatively short. There was no evidence, however, that plaintiff planned to work beyond age sixty-five. Moreover, plaintiff's evidence implied that she would retire at sixty-five. Thus, even when we view the evidence in the light most favorable to plaintiff, as we must, see *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 144, 636 A.2d 744, 753 (1993), we do not believe that the $175,000 verdict was within the range of the evidence presented.

We now must decide the appropriate remedy on remand. Defendant argues both that the damages are excessive and that the

present-value instructions misled the jury. When the sole ground for retrial is excessive damages, our rules of procedure require the trial court to offer plaintiff the opportunity to remit the excess. Civil Rule 59(a) states that "[a] new trial shall not be granted solely on the ground that the damages are excessive until the prevailing party has first been given an opportunity to remit such portion thereof as the court deems to be excessive." V.R.C.P. 59(a). Thus, in *Ventura v. Almartin Motors, Inc.*, 139 Vt. 430, 432, 430 A.2d 1279, 1280 (1981), we held that the trial court improperly failed to offer remittitur in a conversion action. In that case, we rejected the defendant's claim that the "jury's error [in awarding damages] so pervaded the whole verdict as to make the remedy of remittitur ineffective." *Id.* at 431, 430 A.2d at 1280. Finding no error in the jury charge with respect to liability, we granted plaintiff's request to remit the excess damages rather than undergo the expense of a new trial. *Id.* at 431-32, 430 A.2d at 1280.

Other courts have followed our approach and allowed the plaintiff to choose between remittitur or new trial when the sole issue on appeal was excessive damages. In *Caldwell v. Haynes*, 643 A.2d 564, 573 (N.J. 1994), for example, the trial court erred by failing to instruct the jury to discount future lost income or to base lost income on plaintiff's work-life expectancy. The future damages award in that case could be supported only by assuming that the plaintiff would work steadily without a break until he reached eighty years of age. *Id.* at 568. Concluding that "the trial court should be able to determine a realistic and fair calculation of damages as a basis for an order of remittitur," the New Jersey Supreme Court encouraged the trial court to consider remittitur on remand. *Id.* at 575. Although acceptance of remittitur by the plaintiff denies the defendant of a new-trial motion, *id.* at 574, the practice is available "if the only issue is the quantum of damages, the claimant's right to relief is clear, and 'the verdict was not the result of compromise or otherwise tainted.'" *Id.* at 575 (quoting S. Pressler, Current N.J. Court Rules, cmt. 1 on R. 4:49-1 (1994)).

The use of remittitur to reduce excess lost future wages in an action for breach of contract is not unprecedented. In *Cashdollar v. Mercy Hosp.*, 595 A.2d 70, 76-77 (Pa. Super. Ct. 1991), the trial court found that the jury erred in concluding that the parties intended an implied-employment contract to last fourteen years, and properly ordered remittitur for seven of those years. Drawing on circumstantial evidence, the trial court inferred that the forty-seven-year-old

plaintiff would have needed seven years to accomplish the objectives of the employment. *Id.* at 76. In the instant case, the estimate of excess damages is likely to be more reliable than the court's estimate in *Cashdollar*, since we can reasonably assume that plaintiff would have retired at age sixty-five rather than guess at the number of years required to accomplish the objectives of the employment.

 We have already concluded that the jury could properly find defendant liable. Even if the jury instructions on present value were erroneous, we do not believe — and defendant does not allege — that they tainted the jury's deliberations with respect to liability. See *Ventura*, 139 Vt. at 431-32, 430 A.2d at 1280. Nor are the damages so high as to reflect passion and prejudice in the rendering of the verdict. See 2 R. Field, et al., Maine Civil Practice § 59.2, at 61 (2d ed. 1970). Thus, the sole ground for retrial is excessive damages. Accordingly, we hold that the trial court should have ordered a remittitur to an amount equal to the present value of a sum necessary to maintain plaintiff's income until age sixty-five. This remedy is sufficient to eliminate any prejudice that may have resulted from the present-value instruction, as well as to correct the excessive amount of the jury award.

The size of the remittitur is the amount needed to eliminate the excess damages in the jury's verdict. See *Cashdollar*, 595 A.2d at 76 ("A remittitur should fix the highest amount any jury could properly award, giving due weight to all the evidence offered."); C. Harvey, Jr., et al., Maine Civil Practice § 59.2, at 368 (2d ed. Supp. 1981) (remittitur should reflect highest amount jury could properly award). We remand for the court to order the appropriate amount to be remitted or, in lieu thereof, a new trial.

*The liability judgment is affirmed. The damage award is reversed and remanded for proceedings not inconsistent with this opinion.*