2007 VT 75

## David VILLENEUVE v. Charles and Lori BEANE

[933 A.2d 1139]

No. 06-162

¶ 1. August 7, 2007. Landlord David Villeneuve appeals from a judgment, after bench trial, holding him liable for tenants' compensatory and punitive damages for trespass, harassment, and termination of electricity, and for tenants' attorney's fees in this action for back rent. Landlord contends that, notwithstanding the judgment against him, he is entitled to recover attorney's fees for breach of the lease by tenants' failure to pay rent, a claim on which he prevailed, and that the trial court's damage award on tenants' counterclaim was not supported in fact or law. We affirm.

¶ 2. In view of landlord's claim that the damages award was not supported by the evidence, it is necessary to go into the facts in some detail. The trial court's findings, which are unchallenged on appeal, show that landlord is the owner of two houses on Route 15 in Jericho. He lives in one of the houses and rented the other to tenants through a written, nine-month lease. In the winter of 2004-2005, the father lost his job and tenants fell behind in the rent. They were also unable to make regular purchases of oil, and

landlord bought oil to keep the furnace running. Although the father eventually returned to work, he suffered a serious injury in an industrial accident and was unable to continue working. Despite the contributions of other working family members, tenants were not able to keep up with the rent and several months passed without payment. During the final two weeks of the lease, tenants made plans to move. Landlord agreed to rent the premises to other tenants. These plans changed, however, in June 2005. Landlord told the mother that tenants could remain on the premises if they paid $1,200 for one month's rent. The mother obtained the $1,200 from a friend at work and gave the check to landlord.

¶ 3. Rather than allowing tenants to remain, as agreed, landlord attempted to move tenants' belongings out of the house and into a trailer he had parked in the driveway. To accomplish this, he waited until tenants had left for work on Monday, June 13, 2005, and one of their sons had gone to school. The father and one son remained at home, and landlord removed them from the house by offering them work for the day. Once the house was empty, landlord and his employees started to remove tenants' belongings. One of the tenants returned home from work unexpectedly and discovered landlord. After a scuffle that attempted to stop landlord from continuing the removal of tenants' belongings, the police were called and landlord was charged with trespassing and effectively removed from the premises. Tenants moved back into the house.

¶ 4. Landlord filed an eviction action and claimed back rent. Tenants paid rent into court for several months and ultimately left the premises on November 5, 2005. This is not the end of the story, however. After landlord was removed from the premises by the police on June 13, he began a campaign of harassment against tenants designed to force them to leave, all while the eviction action was pending. The campaign included posting signs on the landlord's premises (next door) that stated "Our renter . . . won't pay rent. Owe $6,000 will not lv. Lease expired," and other signs to similar effect. Some signs asked motorists to honk at tenants' home in support of landlord. This resulted in frequent honking, day and night, sometimes by landlord's employees.

¶ 5. Other incidents of harassment included making a change to the Central Vermont Public Service electricity account that deprived tenants of power. As a result, tenants went without water for nine days until power was restored. Tenants retaliated by shutting off power to the barn at the rear of the property, though their actions were short-lived and caused no harm. It took a court order in August to restore water and power to both the house and the barn.

¶ 6. The trial court found in favor of landlord on his claims for back rent, electricity charges and $400 in damages for property damage to the premises, a total of $9,173.72. It denied attorney's fees, provided for in the lease agreement, on the ground that landlord breached the implied covenant of good faith and fair dealing repeatedly.

¶ 7. The trial court found in favor of tenants on their counterclaim for illegal eviction and damages, concluding that landlord had engaged in an illegal eviction on June 13, 2005, and took steps to hide his purpose from tenants by promising to extend the tenancy, accepting rent, and offering short-term employment to family members. The court also concluded that landlord engaged in willful and knowing misconduct that was criminal in nature, and that his conduct was unlawful and outrageous. It awarded $4,000 in compensatory damages and $1,000 in punitive damages for the events of June 13, noting the fear and trauma experienced by tenants when they returned home to find a

group of strangers and landlord removing their belongings. The trial court found landlord's conduct was intentional and designed to avoid legal eviction.

¶ 8. With respect to the campaign of harassment, the court awarded compensatory damages of $2,000. For the termination of electricity and water, the trial court awarded compensatory damages of $4,000 and an additional $1,000 for punitive damages. The compensatory award was intended to compensate tenants for living without water and power during a time when they were making escrow payments into court and while their tenancy was recognized and protected by the court. Landlord's intentional actions supported the punitive damages. The total award to tenants was $10,000 in compensatory damages and $2,000 in punitive damages. The court denied attorney's fees under the landlord-tenant statute because it reasoned that tenants were adequately compensated by the damage awards. The resulting judgment, after considering set-offs, was in the amount of $2,826.28 to tenants.

¶ 9. Landlord makes two arguments on appeal. The first is that the trial court improperly denied landlord attorney's fees, contending that he was entitled to them not only by a contractual provision in the lease, but also by virtue of 9 V.S.A. § 4456(e), which mandates attorney's fees if the tenants damage the premises. Although landlord is correct that both of these provisions would ordinarily entitle him to attorney's fees, we are not persuaded that the trial court erred in failing to grant them. We note that the trial court denied the statutory attorney's fees award to tenants, although they too, were clearly entitled to recover fees after they prevailed on their counterclaim under 9 V.S.A. § 4458. In view of the ultimate result in the case, in which both landlord and tenants prevailed after lengthy proceedings, emergency motions and bench trial, it made little sense for the trial court to award attorney's fees to either side. A remand for an entry of fees for both sides would likely result in a "wash."

¶ 10. On the merits issues — whether the trial court properly awarded tenants punitive and compensatory damages for trespass, harassment, and termination of electricity — there is no error. Landlord concedes that we have recognized an exception to the general rule that breach of contract does not support punitive damages when the breach has the character of a wilful and wanton or fraudulent tort, or when the evidence indicates the breaching party acted with actual malice. *Monahan v. GMAC Mortgage Corp.*, 2005 VT 110, ¶ 4, 179 Vt. 167, 893 A.2d 298. Landlord's contention that his conduct does not meet the standard is without merit. The trial court's findings are replete with conclusions that landlord's conduct was intentional, unlawful, criminal in nature, and outrageous. Given the trial court's recitation of the facts that supported its conclusion, we agree that the standard for punitive damages was met.

¶ 11. As to compensatory damages, landlord claims there was no hard evidence supporting the award. The nature of the conduct caused mainly emotional trauma and inconvenience, as well as some property damage. With the exception of property damage, for which the award was small, these are not damages capable of precise calculation. Cf. *In re Estate of Peters*, 171 Vt. 381, 393, 765 A.2d 468, 477-78 (2000) (damages for loss of dignity do not lend themselves to precise calculation). The trier of fact is in the best position to calculate the award, and such award will not be disturbed on appeal, so long as there is any evidence to support it. *Powers v. Judd*, 150 Vt. 290, 293, 553 A.2d 139, 141 (1988). Overall, the trial court's award was modest in light of its recognition of the outrageousness of the conduct and its effect on tenants. Just as importantly, the trial court was concerned that tenants' right to legal process was fla-

578

grantly violated. In view of the evidence, we cannot conclude that the award was speculative or excessive. See *Haynes v. Golub Corp.*, 166 Vt. 228, 238, 692 A.2d 377, 383 (1997) (overturning compensatory damages where award was speculative and excessive).

*Affirmed.*