2009 VT 103

**David SHADDY v. DEPARTMENT OF LABOR**

[987 A.2d 311]

No. 08-257

¶ 1. November 3, 2009. Claimant David Shaddy appeals from an Employment Security Board determination that he was not entitled to unemployment benefits because he had been fired for gross misconduct connected with his work. We conclude that the administrative law judge abused his discretion by not issuing claimant's requested subpoenas and reverse and remand.

¶ 2. The following facts are undisputed. Claimant, a registered nurse, was employed by Brattleboro Retreat for just over four months, from early September 2007 until January 23, 2008. Certain prescription medications — including capsules of Adderall XR, a regulated drug that contains amphetamine — were tampered with or stolen during November and December of 2007. On January 19, 2008, a coworker noticed, after claimant's shift, that the Adderall had again been tampered with.

¶ 3. Claimant was assigned to be the nurse in charge of the medication room during his next shift, on January 20. For each shift, one nurse had responsibility for keeping medications secure. Claimant was given the keys, and when claimant left on breaks the keys were entrusted to his shift supervisor. The supervisor did not enter the locked medication room without having another staff member present and submitted a written statement to that effect. Another nurse who was on duty during the January 20 shift stated that, although she did go into the medication room alone, she was at all times observed through an open door by other staff. A third nurse stated that she did not enter the medication room alone during the shift. At the end of the shift, the Retreat discovered that eight Adderall capsules had been tampered with, in the same manner as before. Someone had opened the blister packs from the bottom, accessed individual capsules, removed the granules from within, and then closed the capsules.

¶ 4. The following day, January 21, claimant called in sick. On January 22, he was suspended pending an investigation, and on the following day his employment was terminated. Claimant applied for unemployment benefits, and a claims adjudicator allowed the claim, finding that the Retreat had not yet responded to the adjudicator's request for information concerning the claim and that, accordingly, the adjudicator could not find that claimant had been fired for gross misconduct connected with his work. See 21 V.S.A. § 1344(a). The Retreat appealed to an administrative law judge (ALJ) within the Department of Labor. Prior to the hearing, claimant requested that the ALJ issue a subpoena to the Retreat to produce schedules of who was working on the dates of the November and December incidents.

¶ 5. The ALJ held the hearing by telephone. Both claimant and the Retreat's human resources director appeared and both parties submitted exhibits to the ALJ, which were admitted without objection. Those exhibits included the results of claimant's voluntary drug test, the above-mentioned statements from the other nurses on duty during claimant's shift, an affidavit from a pharmacist, and the Retreat's "Drug Diversion Policy," among other items. At the hearing, claimant argued that he should be allowed the requested subpoena. The ALJ declined claimant's request to subpoena the schedules.

¶ 6. The ALJ issued findings of fact and conclusions of law on April 14, 2008. In

pertinent part, the ALJ found that another Retreat nurse discovered a tampered-with blister pack of Adderall on the morning of January 20, and that an examination of the nurses' schedule for January 19 led the Retreat to suspect claimant. The ALJ further found that claimant worked the 3:00 p.m. to 11:00 p.m. shift on January 20 and that on this shift, "[i]t was arranged that no other nurse would enter the medication room alone or without being under observation." During the shift, claimant was assigned as the medication nurse and had the only keys to the medication room except when he went on breaks, at which time he handed over the keys to one of the two other nurses working the same shift. The ALJ credited the employer's testimony that "other nurses going into the medication room on January 20 did so in pairs or were under observation while inside." After the January 20 shift, eight Adderall capsules were found to have had some of their contents removed. The ALJ noted that the claimant had denied any wrongdoing and had undergone voluntary drug testing, which had come back negative. The ALJ then concluded, pursuant to 21 V.S.A. § 1344(a), that claimant should be disqualified from receiving unemployment benefits because he had been "discharged by his last employing unit for gross misconduct connected with his work." The ALJ noted that, "[a]lthough it is remotely possible that someone else could have been responsible for the diversion of the Adderall, the weight of the evidence is that it was the claimant who removed the drug from the capsules."

¶ 7. Claimant then appealed to the Employment Security Board, which adopted the ALJ's findings of fact in toto and affirmed his conclusion that claimant had been discharged for gross misconduct connected with his work. Accordingly, the Board also denied claimant's claim for benefits. This appeal followed.

¶ 8. On appeal, claimant argues that the ALJ erred by not issuing a subpoena for the requested records. Both the ALJ and the Board have the power to issue subpoenas to compel "the production of books, papers, documents and records, necessary and material to be used in connection with any disputed claim." 21 V.S.A. § 1352. As we noted in *Langlois v. Department of Employment & Training*, § 1352 does not detail how this power should be used, other than indicating that the ALJ and the Board "have some measure of discretion in deciding when to issue subpoenas." 149 Vt. 498, 500, 546 A.2d 1365, 1366-67 (1988). We further held that an ALJ is obligated to issue subpoenas when necessary to afford the claimant a fair hearing, see *id.* at 506, 546 A.2d at 1370, but that we were not encouraging "unnecessary or irrelevant subpoenas." *Id.* at 504, 546 A.2d at 1369 (quotation omitted).

¶ 9. We review the ALJ's decision to deny the requested subpoena under an abuse of discretion standard. See *id.* at 506, 546 A.2d at 1370. Here, the Board's position is that claimant was fired only for the incident in January and not for the incidents in November and December and, therefore, evidence bearing on responsibility for the November and December incidents is irrelevant. We disagree. In our opinion there is no question that the records requested were relevant and necessary for claimant, a pro se litigant, to present his case so that the hearing would "ascertain the substantial rights of the parties" as required by 21 V.S.A. § 1351. There were three incidents of tampering with and theft of Adderall capsules. All involved the same drug and the modus operandi for each was similar. Thus, the fact-finder could find it likely that the same person was responsible for each incident. If claimant could show that he could not have been responsible for one of the earlier incidents, that evidence would certainly be relevant to the issue of whether he was the perpetrator of the January incidents. Relevant evidence is

evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." V.R.E. 401. The work schedules and the timing of the earlier incidents clearly meet that standard. A determination that the schedules are not relevant is so clearly wrong that it is an abuse of discretion. Essentially, that is the ruling in *Langlois*, which is a binding precedent for our action here. 149 Vt. at 506, 546 A.2d at 1370.

¶ 10. The dissent contends that even if the Board had allowed the requested subpoena, the documents would not have "materially alter[ed] the conclusion that it was claimant who tampered with the medication on January 19 and 20," due to the "uncontroverted testimony that claimant 'was the only nurse who had access' and 'opportunity' to tamper with the tablets." *Post*, ¶ 21. However, the Board acknowledged that this case presented a credibility contest between the Retreat and claimant. Thus, the strength of the evidence against claimant depended largely on the credibility of other witnesses who themselves had access to the medication room on the days in question. For instance, the conclusion that claimant was the only nurse with access and opportunity hinged on the veracity of the supervisor's written statement that she did not enter the medication room alone, a nurse's statement that she did not enter the medication room without another staff member present, and another nurse's statement that although she did go into the medication room by herself, she was observed at all times through an open door by other staff members. If claimant had been able to raise questions as to the credibility of any of these witnesses, he could have greatly bolstered his case. Yet having access to the work schedules from November and December could have enabled claimant to do just that: if he had been able to show

that he did not have access to the medication room at the time of these earlier incidents, and that one of the witnesses testifying against him did, then claimant would have a strong argument that the witness had a motive to lie and that the witness was in fact responsible for all three incidents. Without examining the documents, we cannot know how they would affect the ultimate weighing of the evidence. If the documents support claimant's position, however, such evidence certainly could "materially alter" the Board's conclusion.

¶ 11. The ALJ abused its discretion in failing to issue a subpoena for the work records because the requested documents were relevant and necessary to afford the claimant a fair hearing. See *Langlois*, 149 Vt. at 500, 506, 546 A.2d at 1366, 1370. Evidence that might cast doubt on one party's version of the events is relevant and necessary to a fair hearing. In addition, all other relevant factors supported issuing the subpoena. The record reveals no reason why the records would be burdensome to assemble or would implicate anyone's privacy interests except those of claimant. Indeed, the Retreat's witness testified from at least part of the records that were denied to claimant. The ALJ owed claimant a duty to provide "'every assistance in presenting his case consistent with the [ALJ's] duty to impartially decide the issues,'" a duty not honored here. *Id.* at 500, 546 A.2d at 1367 (quoting *Dague v. Dep't of Employment Sec.*, 138 Vt. 57, 59, 412 A.2d 706, 707 (1980)). Finally, there is no evidence in the record that the Retreat objected to the requested subpoena, an objection that would have been hard to make since the Retreat used at least part of these records in presenting its case. The battle here is entirely between claimant and the ALJ.

¶ 12. For the foregoing reasons, we reverse and remand, and require the ALJ to issue the requested subpoenas.

*Reversed and remanded for proceedings consistent with this decision.*

¶ 13. **Reiber, C.J.**, dissenting. Because the ALJ was well within his discretion to limit the evidence to the events of January 19 and 20, 2008, under our deferential standard of review I would affirm the holding of the Employment Security Board.

¶ 14. The majority's holding ignores the limited role assigned to this Court in this appeal. We have previously noted that we will affirm the findings of the Employment Security Board if they are "supported by *any* credible evidence in the record." *Whitcomb v. Dep't of Employment & Training*, 147 Vt. 525, 528, 520 A.2d 602, 604 (1986) (emphasis added). Indeed, findings will not be disturbed even where there is substantial evidence to the contrary. *Littlefield v. Dep't of Employment & Training*, 145 Vt. 247, 251, 487 A.2d 507, 509 (1984). We also defer to the Board's construction of statutes it is charged with administering. *Agency of Natural Res. v. Upper Valley Reg'l Landfill Corp.*, 167 Vt. 228, 238, 705 A.2d 1001, 1007 (1997). We construe the record in the manner most favorable to the Board's conclusions. *Harrington v. Dep't of Employment Sec.*, 142 Vt. 340, 344, 455 A.2d 333, 336 (1982). In evaluating claims of error relating to the admission or exclusion of evidence, we will reverse only where the tribunal below has abused its discretion resulting in prejudice. *Keus v. Brooks Drug, Inc.*, 163 Vt. 1, 4, 652 A.2d 475, 478 (1994).

¶ 15. Applying this deferential standard of review to the Board's decision to affirm the conclusion of the ALJ, I do not find grounds for reversal. Claimant raises only one argument on appeal: that the Board erred by adopting the findings of the ALJ, who, according to claimant, relied on the human resources director's testimony concerning earlier incidents of tampering with, and theft of, Adderall. Claimant contends that he was unable to defend himself against the charges below as a result of the ALJ's refusal to issue a subpoena for work records that he says would have shown that he was not on duty during the relevant times of the November and December discoveries of Adderall theft and tampering. No claim is made on appeal that any of the ALJ's findings of fact are not supported by credible evidence. Nor is it claimed that the ALJ abused his discretion in limiting the evidence at the hearing to the events of January 19 and 20, 2008.

¶ 16. Although the majority's opinion focuses exclusively on one decision by the ALJ regarding a subpoena request, it is important to put that decision into context. At the beginning of the hearing, the ALJ stated that he would "postpone addressing [the subpoena question] . . . until I've heard the evidence in the hearing this morning. I will [then] decide whether . . . the information requested is necessary." The ALJ also stated that if the Retreat later refused to produce records after the ALJ decided they were necessary, he would issue a subpoena and reschedule the hearing for a future date to permit service. The ALJ then proceeded to take evidence.

¶ 17. At the hearing, Kathleen Brooks, Brattleboro Retreat's human resources director, testified without objection as follows:

On January 20th at 8 [a.m.] . . . [the] first shift nurse discovered that six of the Adderall tablets had been tampered with. [Claimant] happened to have worked the night before on January 19th . . . . So at 8 o'clock the following morning it appeared as though . . . pills had been tampered with. . . . [A]ll of the second

shift nurses on January 20th came in . . . and were instructed not to go into the medication room except for [claimant]. . . . At change of shift around midnight on January 20th or right before midnight, it appeared that eight more capsules had been tampered with when they did the change of shift count. [*Claimant*] *was the only nurse who had access to the med room and . . . could have had the opportunity to tamper with the capsules,* that's why we terminated [him]. . . . [W]e met with him to confront him on January 23rd after the investigation. . . . [H]e was represented by [the] Union . . . . He . . . had no ability to account for the problems in the medication room . . . . And the Union did not grieve his discharge.

(Emphasis added.)

¶ 18. Given that this undisputed evidence was limited to the January dates only, and that claimant was therefore "the only nurse who had access" and "opportunity" to tamper with the Adderall on January 19 and 20, the question before this Court is whether — after hearing this evidence — it was then an abuse of discretion for the ALJ to deny claimant's request to subpoena documents relevant to incidents that occurred in November and December. When the ALJ asked claimant at the hearing why the materials would be relevant, claimant stated that he "just wanted to address whether [he] was . . . a suspect until I was the medication nurse at the time it happened." The ALJ concluded that neither the work schedule nor the personnel file was relevant, noting that the human resources director "has testified to your schedule for the relevant days" — a statement to which claimant agreed. The ALJ concluded that because claimant's discharge was based solely on charges relating to events that occurred on January 19 and 20, the question of when he became a suspect was not relevant to determining whether he had been discharged for gross misconduct connected with his work on those dates. Neither this conclusion nor the refusal to issue a subpoena was an abuse of discretion.

¶ 19. Despite claimant's arguments to the contrary, the ALJ's determination did not depend upon events that occurred before January 19 and 20. Regarding these January dates only, the ALJ concluded that "the weight of the evidence is that it was the claimant who removed the drug from the capsules" and then stated three reasons for that conclusion: (1) claimant "was on shift each time that the drug was tampered with"; (2) claimant "was the assigned medication nurse in the final incident"; and (3) claimant's "employer . . . testified that other nurses going into the medication room on January 20 did so in pairs or were under observation while inside." Although the ALJ's first reason can plausibly be read as referring to the November or December incidents, it is much more likely (given his ruling on the request for a subpoena) that the ALJ meant to refer only to the two separate January incidents.

¶ 20. Under our deferential standard of review, the ALJ's finding that a preponderance of the evidence supported the conclusion that claimant tampered with the Adderall in January should be affirmed, even if there is substantial evidence to the contrary. *Littlefield,* 145 Vt. at 251, 487 A.2d at 509; see also *Whitcomb,* 147 Vt. at 528, 520 A.2d at 604; *Schaffner v. Dep't of Employment Sec.,* 140 Vt. 89, 92, 436 A.2d 743, 745 (1981). The record amply supports the ALJ's conclusion, with testimony from the Retreat's human resources director and the statements from the other nurses from the Retreat.

¶ 21. It is true that the documents sought by claimant might have shown that it was possible that another employee had the opportunity to divert or tamper with drugs in November and December 2007. What the documents could *not* do, however, is materially alter the conclusion that it was claimant who tampered with the medication on January 19 and 20, 2008. Even if the majority is correct that "the fact-finder could find it likely that the same person was responsible" for each instance of tampering, *ante*, ¶ 9, the majority does not put forth any theory as to how the responsible person on the target dates of January 19 and 20 could be anyone other than claimant. Nor could such a theory be proffered given the uncontroverted testimony that claimant "was the only nurse who had access" and "opportunity" to tamper with the tablets on January 19 and 20.

¶ 22. The majority's conclusion that claimant was deprived of a fair hearing, see *ante*, ¶ 11, does a disservice to the ALJ's efforts in the hearing below. After careful consideration and after hearing all of the evidence, the ALJ properly exercised his discretion in declining to issue the subpoena. 21 V.S.A. § 1352; *Langlois v. Dep't of Employment & Training*, 149 Vt. 498, 500, 546 A.2d 1365, 1366-67 (1988) (holding that § 1352 vests the finder of fact with discretion to issue subpoenas in unemployment-compensation matters). We have previously held that the presiding judicial officer at the administrative proceeding has "broad discretion" to determine relevance. *Haynes v. Golub Corp.*, 166 Vt. 228, 236, 692 A.2d 377, 381 (1997). At issue here were the events of January 19 and 20. The evidence of work attendance in previous months was not going to refute the evidence of claimant's exclusive and solitary access to the medication room on January 19 and 20, 2008. The ALJ was well within his "broad discretion" to refuse the subpoena for evidence that could not even marginally shed

light on the events of January 19 and 20. *Id.*; accord *Fid. & Deposit Co. of Md. v. Wu*, 150 Vt. 225, 232, 552 A.2d 1196, 1200 (1988); cf. V.R.E. 401 (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable"). The ALJ did not abuse his discretion in determining that the evidence sought was not material. For these reasons, I dissent.

¶ 23. I am authorized to state that Justice Burgess joins this dissent.