## Richard R. Farnum, Jr. v. Brattleboro Retreat, Inc.

[671 A.2d 1249]

No. 94-102

Present: **Allen, C.J., Dooley, Morse and Johnson, JJ., and Skoglund, D.J., Specially Assigned**

Opinion Filed November 22, 1995

Motion for Reargument Denied December 22, 1995

*Herbert G. Ogden, Jr.*, of *Harlow Liccardi & Crawford, P.C.*, Rutland, for Plaintiff-Appellee.

*David A. Gibson*, Brattleboro, *June K. Mills*, Guilford (On the Brief) and *Richard T. Cassidy* of *Hoff, Curtis, Pacht, Cassidy and Frame, P.C.*, Burlington, for Defendant-Appellant.

**Allen, C.J.** Defendant Brattleboro Retreat, Inc. appeals a jury verdict awarding plaintiff Richard Farnum, Jr. damages for wrongful discharge, intentional infliction of emotional distress, and quantum meruit. The Retreat argues that (1) as a matter of law, the Retreat's employee handbooks did not create an implied employment contract obliging the Retreat either to follow certain progressive disciplinary steps or to fire plaintiff only for serious misconduct; (2) the court erred in permitting the jury to substitute its judgment for that of the Retreat as to whether plaintiff had committed serious misconduct; (3) there was insufficient evidence to support the jury's determination that plaintiff was not fired for cause; (4) as a matter of law, plaintiff failed to show that the Retreat's conduct in firing him was extreme and outrageous; (5) the jury failed to follow the court's instructions regarding plaintiff's quantum meruit claim; (6) the verdict should be reversed because of juror misconduct; and (7) the trial court erred in awarding interest on the damages from the date of the filing of plaintiff's complaint. We reverse the jury award for intentional infliction of emotional distress; in all other respects, we affirm the verdict.

## I.

Plaintiff began part-time work at the Retreat in 1972 when he was seventeen years old. In 1980, he transferred from the engineering department to the boiler room to become Lead Power Technician, a position he held until he was discharged in 1988. Sometime in 1984, at the suggestion of his supervisor, plaintiff bought a small dump truck, which he leased to the Retreat for various jobs. Over the ensuing years, this sideline became a lucrative business for plaintiff, involving an ever-growing number of trucks and other equipment. While plaintiff continued to receive a salary at the Retreat and to obtain private jobs involving his trucking company, the Retreat paid him over one-half million dollars between 1984 and 1988 for the use and rental of his equipment.

In October 1987, an upper-level manager at the Retreat, Richard Sarle, observed plaintiff supervising a Retreat employee, who was

operating Retreat equipment to dig a foundation for the new home of the Retreat's Chief Executive Officer (CEO), Dr. William Beach, Jr. Sarle immediately called plaintiff's direct supervisor, Ralph Pecorrelli, who then went to the work-site and told plaintiff and the other Retreat employee to cease what they were doing. Shortly after the incident, Sarle sent plaintiff the following memorandum:

> On Tuesday I was very disappointed to observe a hospital employee and hospital bucket loader being utilized on Upper Dummerston Road to dig a portion of the foundation hole for Dr. Beach's new home.
>
> . . . .
>
> It is very important that employees know that there is a separation between hospital projects and private personal projects.
>
> I informed Ralph of this problem and he has assured me that you were informed to stop and use your own equipment and own employee.
>
> Such confusion cannot continue as it should be perfectly clear that Retreat employees are not to do private work while being paid by the Retreat. If this continues it would be grounds for disciplinary action.

The next day, plaintiff wrote Sarle a letter stating that the Retreat employee was on his lunch hour and that plaintiff had never charged the Retreat for its use of his bucket loader, which at the time of the incident was being operated at the Retreat gravel pit. Sarle then checked the Retreat records and noted that plaintiff had billed the Retreat for a full day's use of the equipment he had seen at the site of Dr. Beach's new home. Confronted with this information, plaintiff's wife wrote Sarle a letter stating that she had erred in billing the Retreat rather than Dr. Beach; accordingly, she refunded $575 to the Retreat.

In November 1987, Sarle wrote a memorandum to Dr. Beach detailing the above facts and recommending that plaintiff be placed on probation for six to nine months, and that the Retreat terminate its relationship with plaintiff's trucking company. As Sarle testified at trial, Dr. Beach decided not to follow through on Sarle's recommendation. The following year, Dr. Beach's ties to the Retreat were severed, and Sarle took over as the Retreat's CEO in August 1988.

In February 1988, a new employee, Frank Johnson, was hired to work directly under plaintiff at the Retreat. According to his trial testimony, Johnson became very uncomfortable working for plaintiff because, on a number of occasions, plaintiff had Johnson do plaintiff's private work on Retreat time. Johnson eventually reported these incidents, and in November 1988, three months after Sarle took over as CEO, plaintiff was fired for misuse of Retreat resources.

In April 1991, plaintiff sued the Retreat, claiming damages for wrongful discharge, intentional infliction of emotional distress, and quantum meruit for the loan of a tank truck. Following a six-day trial, the jury awarded plaintiff $90,000 on the wrongful discharge claim, $50,000 on the intentional-infliction-of-emotional-distress claim, and $5850 on the quantum meruit claim. Defendant now appeals the judgment order entered upon the jury's verdict and the court's refusal to grant its motions for judgment notwithstanding the verdict and for new trial.

## II.

The Retreat first challenges the jury's award on plaintiff's wrongful discharge claim. In response to the court's special interrogatories, the jury found that (1) an employment contract arose between plaintiff and the Retreat; (2) the employment was on an at-will basis; (3) the employment was modified so that the Retreat was not permitted to discharge plaintiff without good cause; (4) the Retreat did not fire plaintiff for good cause; and (5) as a result of his termination, plaintiff suffered damages in the amount of $90,000.

## A.

The Retreat argues that the court erred in permitting the jury to find that the Retreat's handbook provisions, which included disclaimers in the two most recent handbooks, created an employment contract that required the Retreat either to fire plaintiff only for serious misconduct or to issue a series of warnings before firing him for lesser misconduct or for poor performance.

Three handbooks were admitted into evidence at trial. Under the heading, "Performance Problems," the 1982 handbook states as follows:

> If after a reasonable time your performance does not improve, *or if you have violated a Retreat rule or regulation,* in most cases you are given a *verbal* warning. Continuing

failure to improve, or subsequent violations, result in *written* warnings. Three written warnings are considered cause for dismissal. Cases of serious misconduct may call for immediate action, including the possibility of termination, without the above process of counseling and warnings.

Under the same heading, the 1986 handbook states as follows:

In most cases, a system of progressive warnings is used. You will usually receive an oral warning. Continuing failure to improve, or subsequent violations, result in *written* warnings. Three written warnings will result in dismissal.

In some cases, you may be placed on probation with or without previous warnings. Probation is for a specified length of time during which you'll have the opportunity to improve your performance. An employee on probation may be terminated without warning.

Cases of serious misconduct or poor performance call for immediate action, including the possibility of termination, without the above warning process.

This handbook then provides "examples of some, but not all, conduct which may subject [an employee] to disciplinary action, including suspension with or without pay, or immediate discharge." One of the examples provided is the misappropriation, misuse, or destruction of Retreat supplies, material, or equipment. In the same section, the handbook states: "All judgments about termination are made at the Retreat's discretion."

In another section entitled "Employment," under a subheading entitled "Employment At Will," the 1986 handbook states that "[a]ll employment is at will," and that "termination may occur by either party at any time." The 1988 handbook includes essentially the same relevant provisions as those contained in the 1986 handbook. Plaintiff signed acknowledgments for both the 1986 and 1988 handbooks stating that (1) he had received a copy of the handbook, (2) he understood that he was responsible for becoming familiar with its contents, and (3) he understood "that the Handbook does not constitute a contract of employment."

Plaintiff surmises that the jury probably relied on the 1982 handbook in finding that his at-will employment had been modified to require good cause for termination. He argues that such reliance is justified because the Retreat failed to prove that it provided addi-

tional consideration for the disclaimers added to the later handbooks, or that plaintiff consented to modification of the employment contract embodied in the 1982 handbook. Plaintiff also argues that, even if the later handbooks apply, the disclaimers they contain are not sufficiently conspicuous to alter the implied employment contract he had with the Retreat. The Retreat contends that, as a matter of law, the later handbooks apply and effectively disclaim any implied contract created by the provisions contained therein. Thus, according to the Retreat, the court erred by allowing the jury even to consider whether the handbooks created an implied employment contract.

Given the contents of the handbook provisions, we conclude that it was, at best from the Retreat's perspective, a jury question as to whether the handbooks created an implied contract. Assuming the later handbooks apply, see *In re Certified Question*, 443 N.W.2d 112, 113, 120 (Mich. 1989) (employer may make changes in written discharge-for-cause policy, even without reserving right to do so, as long as employee is given reasonable notice of policy changes), the provisions contained therein send mixed messages regarding whether employees can be discharged without cause. While one provision states that all employment is at will, other provisions indicate that employees can be discharged only after a series of progressive warnings are given, except in cases involving serious misconduct or poor performance. Further, these latter provisions contain specific examples of conduct that might subject employees to disciplinary actions, including immediate discharge.

The mere inclusion of boilerplate language providing that the employee relationship is at will cannot negate any implied contract and procedural protections created by an employee handbook. See *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 19, 665 A.2d 580, 583 (1995) (giving handbook disclaimer dispositive effect regardless of circumstances or other handbook provisions would allow employer to benefit from offering morale-enhancing procedures and then use disclaimer to forego those procedures when convenient); *Jones v. Central Peninsula Gen. Hosp.*, 779 P.2d 783, 788 (Alaska 1989) (one-sentence disclaimer followed by eighty-five pages of detailed text covering company polices failed to inform employee that personnel manual was not part of employment contract; rather, manual created impression that, notwithstanding disclaimer, employees had certain job protections); *Toussaint v. Blue Cross & Blue Shield*, 292 N.W.2d 880, 895 (Mich. 1980) (because employer presumably benefits from providing employees with procedural protections through improved employee

attitude and quality of work, employer may not treat as illusory promise to dismiss for cause only); *Small v. Springs Indus.*, 357 S.E.2d 452, 454-55 (S.C. 1987) (equitable and social policy reasons militate against allowing employers to promulgate potentially misleading personnel manuals while reserving right to deviate from them at their own caprice; if company policies are not worth paper they are printed on, then it would be better not to mislead employees by distributing them).

The so-called disclaimers in this case are merely some of the many provisions contained in, or associated with, the Retreat's employee handbooks. These provisions must be evaluated in the context of all the other provisions in the handbooks and any other circumstances bearing on the status of the employment agreement. See *Zaccardi v. Zale Corp.*, 856 F.2d 1473, 1476-77 (10th Cir. 1988) (disclaimer does not automatically negate provisions in personnel manual; rather, disclaimer must be read by reference to parties' reasonable expectations and norms of conduct). Considering the handbooks in their entirety, the jury could have reasonably concluded that they created an implied contract precluding the Retreat from discharging plaintiff without cause. See *Taylor v. National Life Ins.*, 161 Vt. 457, 464-65, 652 A.2d 466, 471 (1993) (personnel policy manual may create implied contract obligating employer to fire employees for cause only).

## B.

The Retreat argues, however, that the handbook term "serious misconduct" was too indefinite for the trial court to permit the jury to substitute its judgment as to whether plaintiff committed serious misconduct.* Citing *Hunt v. IBM Mid America Employees Federal Credit Union*, 384 N.W.2d 853, 857 (Minn. 1986), the Retreat contends that because the term "serious misconduct" was not defined in its handbooks, it was too indefinite to create an implied contract that could be interpreted by the jury. This argument is without merit. Unlike the manual at issue in *Hunt*, the instant handbooks provided

---

*To the extent that the Retreat's brief could be construed as arguing that the jury must defer to an employer's reasonable determination that it had good cause to discharge an employee, see 1 L. Larson, Unjust Dismissal § 9.02[2] (1995) (discussing factfinder's role in determining whether employer had good cause to discharge employee), the argument was not preserved. Indeed, the Retreat did not object to the special interrogatory asking the jury to determine whether plaintiff was fired for good cause. Accordingly, we do not address this issue.

specific examples of misconduct warranting immediate discipline and specific procedures to follow in cases not involving serious misconduct. See *Owens v. American Nat'l Red Cross*, 673 F. Supp. 1156, 1166 (D. Conn. 1987) (employee handbook, unlike manual in *Hunt*, provided examples of acts of misconduct that might lead to discipline; therefore, there was material issue of fact for jury as to whether handbook was contract and whether employer breached contract); *Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 883 (Minn. 1986) (though handbook did not define "serious misconduct," it provided procedures definite enough for jury to consider whether employee's contractual rights had been violated).

Here, after retiring to deliberate, the jurors asked the trial court to define "serious misconduct." The court responded, with the agreement of the parties, by writing the jury a short note stating that serious misconduct is not subject to a legal definition in the context of this case, that the 1986 employee handbook gives a general framework of what is not tolerated and sets forth examples of serious misconduct, and that the jury should consider the handbooks along with all the other evidence in the case in determining what is serious misconduct. Assuming the Retreat preserved its objection to the trial court's instruction regarding serious misconduct, we find no error. Nor do we find error, as claimed by the Retreat, in the court refusing to provide the jury with examples of types of conduct that could justify immediate discharge.

The Retreat also argues that, as a matter of law, it was justified in discharging plaintiff for serious misconduct. We disagree. Viewed in a light most favorable to plaintiff, the evidence showed that the Retreat had a very loose attitude toward the private use of Retreat resources by its employees, including those employees in supervisory and managerial positions. Although plaintiff was given a written warning about using Retreat resources for his private work on Dr. Beach's house during Retreat hours, there was evidence that (1) Dr. Beach declined to accept Sarle's recommendation that the Retreat place plaintiff on probation and cut its ties to plaintiff's trucking company; (2) after plaintiff went to see Sarle about the warning he received, Sarle told plaintiff that working for Dr. Beach was a "ticklish" situation and that plaintiff would have to use his best judgment to resolve the situation; (3) at least one supervisor utilized Retreat equipment and personnel during Retreat time after Sarle warned plaintiff about misuse of Retreat resources; and (4) the Retreat did not have a specific written policy on misuse of Retreat

resources until two weeks before plaintiff was fired in November 1988. Further, plaintiff presented evidence that challenged, at least in some respect, all of the incidents of plaintiff's alleged misuse of Retreat resources related in Johnson's testimony. Upon review of the record, we conclude that the jury could have reasonably determined, in light of the above evidence, that plaintiff's actions did not constitute serious misconduct, and that plaintiff was not given fair notice that his actions could result in termination without further warnings. Cf. *In re Gorruso*, 150 Vt. 139, 146, 549 A.2d 631, 636 (1988) (discharge for cause may be upheld if employee's conduct was egregious enough that discharge was reasonable and if employee had fair notice that such conduct could result in discharge). Accordingly, we uphold the jury's award with respect to plaintiff's wrongful discharge claim. See *Center v. Mad River Corp.*, 151 Vt. 408, 413, 561 A.2d 90, 93 (1989) (if any evidence fairly or reasonably supports nonmoving party's claim, judgment notwithstanding verdict would be improper).

## III.

The Retreat also challenges the jury's award on plaintiff's intentional-infliction-of-emotional-distress claim, arguing that, as a matter of law, plaintiff failed to show that the Retreat's conduct in discharging him was extreme and outrageous. We agree that the award cannot stand.

To establish a claim for intentional infliction of emotional distress, plaintiff must demonstrate that extreme and outrageous conduct, done intentionally or with reckless disregard of the possibility of causing emotional distress, resulted in the suffering of extreme emotional distress. *Denton v. Chittenden Bank*, 163 Vt. 62, 66, 655 A.2d 703, 706 (1994). The trial court must determine, as a threshold issue, "whether the conduct was so extreme and outrageous that a jury could reasonably find liability." *Id.* The standard for establishing outrageous conduct is a high one: the conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community. *Id.* The test is objective; the plaintiff must show that the harm resulting from the inflicted distress was so severe that no reasonable person could be expected to endure it. *Baldwin v. Upper Valley Services, Inc.*, 162 Vt. 51, 57, 644 A.2d 316, 319 (1994).

Mere termination of employment cannot support a claim for intentional infliction of emotional distress, but "if the manner of

termination evinces circumstances of oppressive conduct and abuse of a position of authority vis-à-vis plaintiff, it may provide grounds for the tort action." *Crump v. P & C Food Markets, Inc.*, 154 Vt. 284, 296, 576 A.2d 441, 448 (1990). In *Crump*, the jury's award for emotional distress was supported by evidence showing that an employee with eighteen years service was summarily fired after being falsely accused of theft, kept in a three-hour meeting with no opportunity to leave or eat lunch, and badgered to sign a confession.

Here, plaintiff presented the following evidence in support of his emotional distress claim. Some of these facts were disputed at trial, but we view the evidence most favorably to plaintiff. *Center*, 151 Vt. at 413, 561 A.2d at 93 (in reviewing grant or denial of motions for directed verdict or judgment notwithstanding verdict, evidence is viewed in light most favorable to nonmoving party, excluding effect of all modifying evidence). At the time he was terminated, plaintiff had worked for the Retreat for sixteen years, a period that included all of his adult life. The Retreat summoned plaintiff on his day off by emergency beeper and fired him without warning in a three-minute meeting. The personnel officer did not give plaintiff a reason for his discharge other than to say that the decision came from the top and that the material was up in the office. Plaintiff had no opportunity to rebut the charges. When plaintiff returned to the boiler room after being fired, another employee said to plaintiff that he was sorry plaintiff was leaving, which gave plaintiff the impression that everyone knew he had been fired. After plaintiff was fired, the Retreat inquired about the location of some scaffolding. Plaintiff contends that the Retreat should have anticipated that plaintiff would infer from this inquiry that the Retreat was insinuating plaintiff took the staging, which at that time was at the home of another Retreat employee. The Retreat later told plaintiff that it had fired him for misuse of resources, notwithstanding the fact that various Retreat officials had directed him to use Retreat resources for private purposes.

The conduct of the Retreat, even viewed in a light most favorable to plaintiff, does not amount to extreme and outrageous conduct, and pales in comparison to the conduct in *Crump* and the other cases cited by plaintiff. Indeed, in cases with facts similar to the instant case, courts have refused to find outrageous conduct. See *Toth v. Square D Co.*, 712 F. Supp. 1231, 1238 (D.S.C. 1989) (discharging long-term employees with no notice and escorting them from plant in presence of their peers when they had dedicated most of their adult lives to

company was not sufficiently outrageous to support liability on emotional distress claim); *Corum v. Farm Credit Servs.*, 628 F. Supp. 707, 718-19 (D. Minn. 1986) (abruptly firing plaintiff after years of loyal service and requiring him to clean out his desk and leave immediately was not outrageous conduct). Accordingly, we reverse the trial court's denial of the Retreat's motions for directed verdict and for judgment notwithstanding the verdict on plaintiff's emotional distress claim.

## IV.

Next, the Retreat argues that the jury's award on plaintiff's quantum meruit claim must be set aside because the jury failed to follow the trial court's instructions to mitigate damages. The evidence showed that shortly before plaintiff was fired in November 1988, he volunteered the use of his tank truck to clean up an oil spill on Retreat property. According to plaintiff's testimony, he requested that the Retreat clean the tank before returning the truck, which he used to spread water on roads for dust control. In December 1988, the Retreat informed plaintiff that it would let him know as soon as the tank was cleaned out. In February 1989, the Retreat asked plaintiff to remove his truck from its property. Plaintiff testified that he did not pick up the truck because he believed the Retreat would never pay for cleaning it once he removed it from Retreat property. In January 1990, the Retreat demanded that plaintiff make arrangements to remove the truck. Plaintiff again responded that it needed to be cleaned before he could use it, and he included a bill charging the Retreat $17,190 for rental of the truck from February 1989 to January 1990. The Retreat cleaned the tank in the spring of 1991, and plaintiff retrieved the truck promptly thereafter.

The jury awarded plaintiff $5850 in damages for use of the tank truck. The jury's reduction of the damages sought by plaintiff indicates that it followed the court's instruction to mitigate damages. Given the evidence regarding the Retreat's agreement to clean the tank and its long delay in cleaning it, the jury's award was not clearly wrong. See *Hardy v. Berisha*, 144 Vt. 130, 133-34, 474 A.2d 93, 95 (1984) (trial court may not disturb jury verdict unless verdict is clearly wrong).

## V.

The Retreat also argues that the jury's verdict must be reversed because of juror misconduct. On the next to last day of trial, a Retreat

witness heard a juror comment in the jury room that one of the witnesses was lying. Upon investigating the incident, the court learned that the juror had been referring to a Retreat witness. Although the juror stated that she had not prejudged the case, the court dismissed her. The court then asked any juror who had been affected by the comment to tell the court in chambers in private. No juror came forward. After then being polled in open court, all the jurors stated that they were not influenced by the remark. The Retreat moved for a mistrial, and the court denied the motion.

In *Isabelle v. Proctor Hospital*, 131 Vt. 1, 3, 298 A.2d 818, 819 (1972), this Court held that a new trial may be justified "when a juror goes so far as to express an opinion about the case during trial." In that case, however, the juror stated during trial outside of court to persons not on the panel that he had made up his mind that the plaintiff should not prevail. See *Isabelle v. Proctor Hospital*, 129 Vt. 500, 502-03, 282 A.2d 837, 838-39 (1971). Here, in contrast, the juror's comment was made only in the presence of other jurors, and did not reflect her opinion as to how the case should come out. The court dismissed the juror who made the comment, and after polling the jury, concluded that none of the other jurors had been influenced by the remark. We find no abuse of discretion in refusing to grant the Retreat's motion for a mistrial. See *State v. Wheel*, 155 Vt. 587, 600, 587 A.2d 933, 942 (1990) (motions for new trial based on juror misconduct are addressed to trial court's sound discretion).

## VI.

Finally, the Retreat argues that the trial court abused its discretion in awarding interest on the jury's award from the date of the filing of plaintiff's complaint. According to the Retreat, although plaintiff's wrongful discharge claim was characterized as breach of contract, the damages were speculative and not liquidated or readily ascertainable; therefore, prejudgment interest was not appropriate. See *Gilman v. Towmotor Corp.*, 160 Vt. 116, 121, 621 A.2d 1260, 1263 (1992) (prejudgment interest must be calculated on liquidated or reasonably ascertainable damages only).

We conclude that the Retreat has waived this argument by failing to raise it before the trial court. See *id.* at 121-22, 621 A.2d at 1263. During its instructions, the court told the jury that it, rather than the jury, would calculate interest on the damages, if there were any. The Retreat made no objection. After the verdict, the court asked the

parties to submit recommendations for interest. Plaintiff filed a memorandum recommending that he be awarded approximately $77,000 in interest. The Retreat did not submit a responsive memorandum. The trial court awarded plaintiff approximately $44,000 in interest. In its motions for new trial and for judgment notwithstanding the verdict, the Retreat argued that the interest award, assessed at 12%, was excessive given the current actual market rates at that time. The Retreat did not argue, however, that the award was improper because the underlying damages were too speculative. Therefore, we decline to consider this argument for the first time on appeal.

*The superior court's denial of the Retreat's motion for judgment notwithstanding the verdict is affirmed with regard to plaintiff's wrongful discharge and quantum meruit claims, and is reversed with regard to plaintiff's intentional-infliction-of-emotional-distress claim. The matter is remanded for entry of final judgment in accordance with the views expressed herein.*