David RAYMOND, Plaintiff–Appellee,

v.

INTERNATIONAL BUSINESS MACHINES CORP., Defendant–Appellant.

No. 97–9222.

United States Court of Appeals, Second Circuit.

Argued April 29, 1998.

Decided May 28, 1998.

James W. Runcie, Ouimette & Runcie, Vergennes, VT, for Plaintiff–Appellee.

Anthony Herman, Covington & Burling, Washington, DC (Jeffrey Huvelle, Bruce P. Smith, Covington & Burling, Theresa K. Mohan, International Business Machines Corp., White Plains, NY, on the brief), for Defendant–Appellant.

Before: MESKILL and CABRANES, Circuit Judges.*

PER CURIAM:

Defendant IBM appeals a jury verdict awarding $869,156 in damages to plaintiff David Raymond, a former IBM technician who brought this action alleging claims under Vermont law for breach of contract, promissory estoppel, and retaliation arising out of his dismissal by IBM. Raymond alleged, among other things, that IBM entered into an implied contract under which he could only be fired for "good cause," and that by firing him without good cause, IBM breached this contract. The case was tried in diversity jurisdiction in the United States District Court for the District of Vermont (J. Garvan Murtha, *Chief Judge*), and a verdict was returned on July 14, 1997. The jury found for plaintiff on the breach of contract claim but found for IBM on the retaliation and promissory estoppel claims. On appeal, IBM contends that the district court erred by granting plaintiff's motion for leave to serve a jury demand out of time, by denying IBM's motion for judgment as a matter of law based on insufficiency of the evidence supporting the verdict, and by misinstructing the jury as to the legal standard for finding an implied contract of employment under Vermont law. For the reasons stated below, we affirm the judgment of the district court.

I.

Plaintiff filed this action on May 24, 1995, and accompanied his complaint with a demand for a jury trial, but he concedes that he failed to serve the jury demand upon IBM within ten days, as required by Federal Rule

---

* Judge Van Graafeiland, who was originally a member of the panel, recused himself prior to oral argument and did not participate in this decision. *See* 2d Cir. Local Rule § 0.14.

of Civil Procedure 38(b).[1] He characterizes this mistake as a "clerical error," and maintains that he believed at the time that IBM had been served with the jury demand. Both parties proceeded with extensive discovery, filed cross-motions for summary judgment, and otherwise prepared for trial. IBM claims that it learned for the first time in May 1997 that the case had been placed on the district court's jury trial calendar for the following month. Never having been served with a jury demand by plaintiff, IBM moved to have the case tried as a bench trial on the ground that plaintiff had waived a jury trial by failing to comply with the terms of Rule 38(b). Plaintiff responded by moving for an enlargement of the time in which to serve a jury demand pursuant to Federal Rule of Civil Procedure 6(b)(2) and/or for the court to exercise its discretion to order a jury trial pursuant to Federal Rule of Civil Procedure 39(b).

Rule 39(b), which directly concerns the failure to timely serve a jury demand, provides that "notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury." Rule 6(b)(2) addresses generally the failure to conform to time limits specified in the Federal Rules of Civil Procedure. It provides that "[w]hen by these rules ... an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion ... upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

The district court denied IBM's motion for a bench trial and by memorandum endorsement granted plaintiff's Rule 6(b)(2) and

Rule 39(b) motions, after which plaintiff served a jury demand upon IBM and the case was tried to a jury. On appeal, IBM contends that, in the absence of a showing by plaintiff that his failure to serve a timely jury demand was caused by something beyond mere inadvertence, it was reversible error for the district court to grant plaintiff's Rule 39(b) and Rule 6(b)(2) motions.

IBM relies principally upon our decision in *Noonan v. Cunard Steamship Co.*, 375 F.2d 69 (1967). In *Noonan*, the plaintiff had failed to timely serve a jury demand and moved for the court to order a jury trial under Rule 39(b). The district court denied the motion but granted a subsequent motion to dismiss the case without prejudice pursuant to Rule 41(a)(2),[2] permitting the plaintiff to refile the action and to timely serve a jury demand in a new action. *Id.* at 70. We reversed.

In reversing the dismissal of the action, we observed that it would have been error for the court to have granted the plaintiff's Rule 39(b) motion for a jury trial because "mere inadvertence in failing to make a timely jury demand does not warrant a favorable exercise of discretion under Rule 39(b)." *Id.*[3] Only a "showing *beyond* mere inadvertence" would justify Rule 39(b) relief. *Id.* (emphasis in original). We noted that although it would have been error for the district court to have granted the Rule 39(b) motion, "[t]he interesting question is whether the matter should stand otherwise because relief from the inadvertent failure to make a timely jury demand was here accomplished by permitting dismissal without prejudice." *Id.* at 70–71. That is, could the district court use its authority under Rule 41(a)(2) to cure the plaintiff's failure to timely serve a jury demand even though it could not do so under Rule

1. Rule 38(b) provides in pertinent part:
   Any party may demand a trial by jury of any issue triable of right by a jury by ... serving upon the other parties a demand therefore in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue.

2. Rule 41(a)(2) provides in pertinent part:
   [A]n action shall not be dismissed at the plaintiff's instance save upon order of the court and

upon such terms and conditions as the court deems proper.... Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

3. We have since reaffirmed this rule. *See, e.g.*, *Higgins v. Boeing Co.*, 526 F.2d 1004, 1006 n. 2 (2d Cir.1975) ("[D]espite the discretionary language of Rule 39(b) some cause beyond mere inadvertence must be shown to permit granting an untimely demand.").

39(b)? We held that it could not because "decisions denying leave to discontinue without prejudice for the sole purpose of overcoming inadvertent failure to make a timely jury demand accord better than an opposite view with the policies of Rule 38(a) insisting on promptness and of Rule 41(a)(2) limiting the former freedom of dismissal of plaintiffs in actions of law." *Id.* at 71.

▪ ██ IBM argues that because in the instant case there was no showing that anything beyond mere inadvertence accounted for plaintiff's failure to timely serve the jury demand, *Noonan* precluded the district court from granting a jury trial, whether by way of Rule 39(b) or Rule 6(b)(2). It is true that insofar as plaintiff offers no explanation beyond mere inadvertence for his failure to timely serve the jury demand, the district court erred under *Noonan* in granting plaintiff's Rule 39(b) motion. However, we do not believe that the district court abused its discretion in granting leave to serve the jury demand out of time pursuant to Rule 6(b)(2).

██ There is some force to the argument by analogy that if *Noonan* precludes use of a *motion to dismiss* under Rule 41(a)(2) in order to circumvent the court's narrow discretion under Rule 39(b), then Rule 6(b)(2) must likewise be foreclosed from use for that very same purpose. However, as the Supreme Court observed in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), Rule 6(b) is "generally applicable to *any* time requirement found elsewhere in the rules unless *expressly* excepted." *Id.* at 389 n. 4, 113 S.Ct. 1489 (emphasis added). The rule specifically excepts its application to certain provisions of the Federal Rules of Civil Procedure, but these exceptions do *not* include Rule 38(b). Therefore, the plain text of Rule 6(b)(2) suggests that the rule is meant to apply to the time constraint imposed by Rule

38(b). Moreover, in *Pioneer*, the Supreme Court noted that

> [i]t is not surprising ... that in applying Rule 6(b), the Courts of Appeals have generally recognized that 'excusable neglect' may extend to inadvertent delays. Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant.[4]

*Id.* at 391–92, 113 S.Ct. 1489 (citations and footnotes omitted). In other words, mere inadvertence, *without more, can* in some circumstances be enough to constitute "excusable neglect" justifying relief under Rule 6(b)(2).

The Supreme Court held that the inquiry into whether a failure to abide by a specified time constraint constitutes "excusable neglect" is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including prejudice to the other party, the reason for the delay, its duration, and whether the movant acted in good faith. *Id.* at 395, 113 S.Ct. 1489. We hold that in light of the Supreme Court's decision in *Pioneer*, the requirement in *Noonan* of a showing "*beyond* mere inadvertence" should not be construed to preclude a district court from granting a Rule 6(b)(2) motion in appropriate circumstances.

Applying the equitable criteria described in *Pioneer*, we hold that in the circumstances presented, the district court did not abuse its discretion in granting plaintiff's Rule 6(b)(2) motion. IBM does not point to any evidence that would tend to show that plaintiff acted in bad faith. Although the delay in serving the jury demand was considerable, plaintiff points out that memoranda of law filed with the court by both parties, and the court's own summary judgment opinion, appear to

---

4. *Pioneer* addressed the "excusable neglect" standard of Rule 9006 of the Federal Rules of Bankruptcy Procedure. However, the Court noted that Rule 9006 "was patterned after Rule 6(b)" of the Federal Rules of Civil Procedure. *Pioneer*, 507 U.S. at 391, 113 S.Ct. 1489. And in interpreting the term as it is used in the bankruptcy rules, the Court looked to its meaning in Rule 6(b). We have recently held that *"Pioneer's* more liberal definition of excusable neglect is applicable beyond the bankruptcy context where it arose." *Canfield v. Van Atta Buick*, 127 F.3d 248, 250 (2d Cir.1997) (per curiam) (internal quotation marks and citation omitted).

assume that the case would ultimately be tried to a jury. Accordingly, there is little indication that IBM suffered prejudice as a result of the delay. In these circumstances, the district court acted well within its discretion under Rule 6(b)(2) in granting plaintiff leave to serve a jury demand out of time.

## II.

### A. Existence of an Implied Contract

■ We turn briefly to IBM's other claims on appeal. IBM argues that there was insufficient evidence to support the jury's verdict that IBM had entered into an implied contract under which plaintiff could only be fired for cause. In determining whether such an implied contract exists, the Vermont Supreme Court has noted that "courts have considered a variety of factors . . . including the personnel policies or practices of the employer." *Benoir v. Ethan Allen*, 147 Vt. 268, 514 A.2d 716, 717 (1986) (citation omitted). In the instant case, IBM points to a disclaimer in the 1993 version of its personnel handbook which states that "[e]mployment at IBM may be ended by the employee or IBM at any time for any reason. This is called employment at will." Earlier versions of the handbook published in 1981 and 1984 did not include this disclaimer. However, the disclaimer alone is not conclusive evidence that IBM maintained a policy of employment at will. Disclaimers of this sort "must be evaluated in the context of all the other provisions in the handbooks and *any other circumstances bearing on the status of the employment agreement*." *Farnum v. Brattleboro Retreat, Inc.*, 164 Vt. 488, 671 A.2d 1249, 1255 (1995) (emphasis added).

In this case, plaintiff pointed to language in earlier versions of the personnel handbook stating that termination of employment "can also be initiated by management if an employee fails to meet IBM's performance, punctuality or attendance standards, or if an employee engages in misconduct or violates company policy." The jury could reasonably have understood such language to suggest that employees would not be fired without reason. In addition, IBM officials testified at trial that the company did indeed have a policy of firing employees only for cause, and

plaintiff testified that this policy had been communicated to him by specific IBM officials, whom he identified by name. In light of the contextual approach favored by the Vermont Supreme Court, it was not unreasonable for the jury to infer from the evidence presented that there was an implied contract under which IBM agreed not to fire its employees without cause.

### B. Evidence of Good Cause

■ The jury's finding that IBM lacked good cause to fire plaintiff was likewise supported by sufficient evidence. Plaintiff introduced evidence that his chief accuser in the internal investigation that led to his dismissal, his co-worker Bob Howard, was told that "his job was on the line" if he did not "cooperate." Plaintiff argued to the jury that Howard's cooperation was coerced and that IBM could not therefore have had a reasonable, good faith belief in the results of its investigation. Plaintiff also introduced evidence that the IBM official who conducted the investigation of his alleged misconduct was biased as a result of complaints previously lodged against him by plaintiff through IBM's grievance procedure. Viewing this evidence in the light most favorable to plaintiff, as we must, *see, e.g., Logan v. Bennington College Corp.*, 72 F.3d 1017, 1022 (2d Cir.1995), we conclude that a reasonable jury could have found that IBM lacked a reasonable, good faith belief that plaintiff had engaged in misconduct.

### C. Jury Instructions

■ Finally, IBM suggests that the district court's jury instructions concerning the formation of implied contracts of employment under Vermont law contained language that could have misled the jury into focusing on plaintiff's *subjective* understanding of IBM policy rather than the *objective* manifestations of IBM's intent to be bound by a policy of firing employees only for cause. We review jury instructions in their full context, and we will not order a new trial unless the instructions were "prejudicial" and "highly confusing." *Warren v. Dwyer*, 906 F.2d 70, 73 (2d Cir.1990). We have reviewed the jury instructions in their entirety and we find no

reason to believe that they were "highly confusing."

### III.

For the foregoing reasons, the judgment of the district court is affirmed.