## Judy Trombley v. Southwestern Vermont Medical Center

[738 A.2d 103]

No. 97-320

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed July 16, 1999

*Herbert G. Ogden, Jr.*, and *Alicia L. Aiken* of *Liccardi Crawford & Ogden, P.C.*, Rutland, for Plaintiff-Appellee.

*Karen McAndrew* and *Jeffrey J. Nolan* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, for Defendant-Appellant.

**Morse, J.** Defendant Southwestern Vermont Medical Center (SVMC) appeals a jury verdict awarding plaintiff Judy Trombley damages for wrongful termination. SVMC claims the trial court erred by: (1) failing to grant its motion for judgment as a matter of law because plaintiff was an at-will employee; (2) admitting in evidence an out-dated employee handbook; (3) instructing the jury that, if it found that plaintiff was entitled to disciplinary procedures, plaintiff could be terminated only for cause; (4) placing the burden of proof on defendant to show just cause for discharge; (5) excluding supervisory reports of complaints by patients who had failed to waive confidentiality to allow plaintiff to inspect their medical records; (6) admitting hearsay testimony; (7) instructing the jury it could award front pay; and (8) failing to reduce the award of back pay. We affirm.

Plaintiff, a Licensed Professional Nurse (LPN), began her employment with SVMC in 1958. After four years of employment, she left SVMC, but returned to work there in 1967. Twenty-five years later, in 1992, she was terminated.

In 1981, SVMC distributed to employees a revised employee handbook, which, under "Resignations and Dismissals," stated:

> Recommendation for dismissal of an employee is the responsibility of the Department Head. An employee may receive a reprimand for inefficiency, improper conduct or violation of hospital policies. Such a reprimand will be written in duplicate by the Department Head, signed by a member of the hospital administration, countersigned by the employee and placed in the employee's personnel folder.

> The third reprimand as outlined above will result in automatic dismissal.

In 1989, Carole Heaney became plaintiff's supervisor. From 1989 until plaintiff's termination, various supervisory personnel received complaints about plaintiff by patients and nursing staff. Heaney discussed the complaints with plaintiff and noted each complaint on a

"Performance Record" form. The complaints included allegations by patients or their relatives of callous and insensitive treatment. Several co-workers also complained that she was uncooperative with nursing staff. Between 1989 and 1991, Heaney gave plaintiff warnings, both verbal and written, and supervisor counseling. None of the "Performance Record" reports indicate that plaintiff reviewed the statements made in them. In 1991, plaintiff was suspended for three days for refusing to "accept[ ] assignments as delegated by charge nurse."

On January 1, 1992, four months before plaintiff's termination, SVMC again revised the employee handbook. The "Introduction" included the following disclaimer:

> Nothing in the handbook should be interpreted to represent a contract of employment. You and the Medical Center may terminate the employment relationship at any time. Employees should be aware that the policies and benefits summarized in this booklet are not permanent conditions of employment.

> Please read this handbook carefully and keep it handy for future reference. You have a responsibility to be familiar with the contents.

The section entitled "When You Leave" described the discharge procedure as follows:

> A formal progressive disciplinary procedure has been developed to ensure that employees are treated in a consistent and reasonable manner. Toward this end, the Medical Center will, where reasonable, provide employees with an opportunity to correct inadequate or inappropriate work behavior. In most cases progressive disciplinary procedure will include verbal counseling, written counseling, suspension and finally, if corrective action has not been taken, discharge.

In February 1992, Heaney filled out a performance record in response to a complaint about plaintiff from a patient's daughter. According to the report, "her mother did not get the care that she needed from [plaintiff]." The report indicated that Heaney approached plaintiff with the complaint. Plaintiff contended that when she offered to bathe the patient the patient refused. As a result of the

complaint, the patient was assigned to a different care provider.[1] On March 9, Heaney filled out another performance report following a complaint by the daughter of another patient asking that plaintiff be reassigned because she had fed her mother too quickly. The performance record indicates that plaintiff denied she had fed the patient too quickly and said that Mrs. Whiton, the patient, had never relayed this to her. Plaintiff contended that: "Mrs. Whiton's daughter was probably angry because [I] suggested that they limit visitors." On March 28, Heaney made another "Performance Record," noting in the "description outlining employee's behavior" section: "Mrs. B. McKee commented on Judy's mumbling under her breath while in her room and described how bad Judy's day was going." In the "noting expected change in behavior" section, Heaney stated: "Will review [plaintiff's] record — incidents of complaints are too frequent. Will discuss with Julia and Suzie. Recommend dismissal. Third reprimand." The report was signed by Heaney.

On April 6, Heaney prepared a "Counseling Report Form" alleging that plaintiff lacked "caring" behavior towards patients as evidenced by complaints from patients or their families and recommended plaintiff be terminated from employment with SVMC. The report stated:

> The employee was advised of the following policy;
>
> According to the personnel policies of Southwestern Vermont Medical Center, an official reprimand may be issued to employees for inefficiency, improper conduct or violation of hospital policies. The third reprimand results in automatic dismissal from your job.

There was a place for "employee comments" and a signature line for the employee. Both were left blank. A statement below the signature line noted that the employee's signature indicated only that the employee had an opportunity to read the statements, not that the employee necessarily agreed with them. Plaintiff was subsequently fired. She was fifty-eight years old.

Plaintiff filed suit in August 1994 against SVMC and Heaney. Her complaint against Heaney was dismissed before trial. In her com-

---

[1] At trial, a letter from the patient was admitted into evidence stating that she had never complained about plaintiff, in fact, plaintiff "took very good care of me." The patient noted that her youngest daughter had complained about the care, but "never mentioned [plaintiff]. [I]n fact she didn't know who was on that day."

plaint against SVMC, plaintiff claimed that she was (1) discriminated against in violation of 21 V.S.A. § 495(a)(1) because of a seizure disorder, (2) a victim of age discrimination in violation of 21 V.S.A. § 495(a)(1) and (3) terminated in breach of her employment contract with SVMC.

During discovery, a dispute developed over the production of the medical records of patients who had complained about plaintiff. In response to plaintiff's request for those records, SVMC sought a protective order, arguing that the patient records were confidential. In April 1996, the court directed SVMC to either obtain waivers from patients of any applicable privilege or refrain from introducing at trial any evidence of complaints by patients who did not waive the confidentiality of their medical records.

In September, SVMC filed a motion in limine requesting the court to admit evidence at trial of personnel records that contained complaints by those patients from whom they had been unable to obtain waivers. One month later, SVMC requested that the court inspect the medical records of patients in camera to determine whether they contained any relevant information. The court denied both motions.

At trial, SVMC introduced testimony and documents in plaintiff's personnel file about complaints made by both nursing staff and patients. Plaintiff attacked the credibility of the complaints with testimony highlighting inconsistencies and inaccuracies with the alleged complaints. Furthermore, plaintiff introduced testimony by several co-workers describing her capabilities both with patients and staff members.

At the close of the evidence, the court submitted the claims for disability discrimination and breach of contract to the jury. The jury returned a plaintiff's verdict, awarding her $60,000 in past wages (back pay) and $65,000 in future lost wages (front pay). Although the jury determined plaintiff was handicapped, it did not find that SVMC had discriminated against her on that basis. Instead, the jury based liability on breach of her employment contract because she was dismissed without cause and she was not terminated in the "manner and means" of SVMC's discharge procedure.

SVMC moved for judgment notwithstanding the verdict or, in the alternative, for a new trial or remittitur. The court denied the motion.

## I.

SVMC first contends that the trial court erred in failing to grant its motion for judgment as a matter of law because plaintiff was an at-will

employee. SVMC claims that the 1992 handbook was in effect at the time of plaintiff's discharge and thus controlled the discharge.

An employment contract may be "at-will," terminable at any time, by either party, for any reason or for no reason at all. See *Sherman v. Rutland Hosp., Inc.*, 146 Vt. 204, 207, 500 A.2d 230, 232 (1985). In *Taylor v. National Life Insurance Co.*, however, we held that personnel manuals inconsistent with an at-will relationship may be used as evidence that the employment contract requires good cause for termination. See 161 Vt. 457, 464, 652 A.2d 466, 471 (1993); see also *Toussaint v. Blue Cross & Blue Shield of Mich.*, 292 N.W.2d 880, 892 (Mich. 1980); *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 629-30 (Minn. 1983); *Woolley v. Hoffmann-La Roche, Inc.*, 491 A.2d 1257, 1265 (N.J. 1985). Handbook provisions committing the employer to a progressive discipline system are sufficient for a jury to find that the employer may terminate the employee only for cause. See *Haynes v. Golub Corp.*, 166 Vt. 228, 234, 692 A.2d 377, 380 (1997).

■ The trial court correctly submitted the issue of the nature of the employment relationship to the jury. The 1992 handbook stated that "[a] formal progressive disciplinary procedure has been developed to ensure that employees are treated in a consistent and reasonable manner." Furthermore, plaintiff introduced into evidence the counseling report recommending her termination. The report stated that an employee may receive a reprimand for "ineffective, improper conduct, or violation of hospital policies. The third reprimand results in automatic dismissal from your job." Even though the 1992 handbook was in effect, the report contained the exact language used in the disciplinary procedures from the 1981 handbook. The fact that plaintiff's supervisor used the language from the 1981 handbook in the discharge report, the ambiguity in the 1992 handbook discharge procedure, and the relatively short time the 1992 handbook was in effect amply gave rise to a jury question on the terms of employment. See *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 20, 665 A.2d 580, 584 (1995) (policies which expressly or impliedly include promise of specific treatment in specific situations may be enforceable in contract); *Benoir v. Ethan Allen, Inc.*, 147 Vt. 268, 270, 514 A.2d 716, 718 (1986) (court may consider other evidence in addition to personnel manual in determining whether there exists implied-in-fact promise for continued employment, including practices of the employer).

## II.

### A.

SVMC next contends that the court erred in instructing the jury that the 1981 employee handbook was relevant to determine whether the employment relationship could be terminated at-will or only for just cause. SVMC claims that the court should have submitted only the most recent handbook to the jury for determining whether the 1992 handbook's progressive discipline procedure established an implied contract.

When we determined that personnel manuals may modify an at-will agreement to require good cause for termination, see *Taylor*, 161 Vt. at 464, 652 A.2d at 471, we further concluded that when an employment policy manual demonstrates a commitment to a progressive discipline procedure, it may be submitted to the jury, and the jury may find that the employment handbook restricted defendant to terminating employees only for cause. See *id.* at 465, 652 A.2d at 471.

SVMC asks this Court to expand our holding in *Taylor* to allow handbook modifications to amend existing employer-employee relationships, and that the superseding handbook, as a matter of law, be the only relevant document in a wrongful termination action. SVMC claims that subsequent modifications of handbook provisions, so long as notice is provided to the employees, are the exclusive source of potential contract rights.

In *Toussaint*, the Michigan Supreme Court held that an employer may change employment personnel policies or practices unilaterally, so long as the employee believes that the policies and practices established are official, fair, and applied with consistency and uniformity to all employees. See 292 N.W.2d at 892. Many courts which have adopted the *Toussaint* unilateral contract theory have determined as a matter of law that an employer has the right to modify the unilateral contract terms with notice to its employees. See *Ferrera v. A.C. Nielsen*, 799 P.2d 458, 460 (Colo. Ct. App. 1990) (employer's right to modify employee handbook presumed because employer must be able to respond flexibly to changing conditions): *In re Certified Question (Bankey v. Storer Broadcasting Co.)*, 443 N.W.2d 112, 120 (Mich. 1989) (employer may change or amend personnel policy, with notice to employees, because modern business climate requires businesses to be adaptable to changing circumstances); *Sadler v. Basin Elec. Power Coop.*, 431 N.W.2d 296, 298 (N.D. 1988) (employer may modify an employee handbook and thus effec-

tively modify a previously existing employment contract with employee). We agree that employee handbooks may be modified or altered subsequent to employment and, if the employee has knowledge of the modifications of the policies and procedures,[2] the modified version governs the terms of employment.

This determination does not mean, however, that the most current employment handbook must, as a matter of law, be the sole basis for employee termination procedures. We begin by noting that employee manuals containing "definitive policies, which expressly or impliedly include a promise for specific treatment in specific situations, especially when the employer expects the employee to abide by the same, may be enforceable in contract." *Ross v. Times Mirror, Inc.*, 164 Vt. at 20, 665 A.2d at 584. Furthermore, "[t]he critical inquiry is, of course, whether the procedure amounted to an enforceable promise of specific treatment in a specific circumstance." *Id.* at 22, 665 A.2d at 585. In *Farnum v. Brattleboro Retreat, Inc.*, we held that whether several employee handbooks created an implied employment contract was a question for the jury. See 164 Vt. 488, 494, 671 A.2d 1249, 1254 (1995) (whether employee could be discharged without cause where contents of three handbooks contained mixed messages was question for jury). The applicable discharge procedures must be evaluated within the context of all the other provisions in the handbooks and any other circumstances pertaining to the status of the employment agreement. See *id.* at 495, 671 A.2d at 1255.

■ Here, the evidence at trial was ambiguous regarding which discharge procedure was in place at SVMC in the spring of 1992. The 1981 handbook provided for a "three-reprimands-and-you're-out" progressive discipline policy. The 1992 handbook provided a more flexible "progressive disciplinary procedure." The trial court determined that the language of the 1992 handbook was unclear as to whether the formal disciplinary procedure from the 1981 handbook was incorporated into the 1992 handbook with the phrase "[a] formal progressive disciplinary procedure *has been developed.*" (Emphasis added.) The trial court instructed the jury to consider both handbooks to decide whether that language automatically incorporated the 1981 procedures into the 1992 handbook. We conclude that the trial court correctly determined that whether one or both handbooks formed the procedures for termination was a question of fact for the jury.

---

[2]Plaintiff conceded at trial that she had notice of the changes adopted in the 1992 handbook.

## B.

SVMC next contends that the trial court erred by instructing the jury that plaintiff could be terminated only "for cause" if it found that she was entitled to defined disciplinary procedures. The court charged the jury:

> [I]f you decide that the Defendant established policies and practices regarding discharge and that Plaintiff had a legitimate expectation that such policies and practices would be followed, then you must decide whether unlike the at-will relationship, the implied contract precluded the Defendant from discharging Plaintiff without just cause.

SVMC did not specifically object to this instruction. Instead, SVMC objected to the court's failure to charge the jury that the 1992 handbook replaced the 1981 handbook. Trial counsel[3] stated: "Defendant continues to object to submission of the just cause to the jury. We object to the failure to give No. 19." SVMC had requested in charge No. 19 that the court instruct the jury: "[O]nly the handbook in effect at the time of . . . the discharge [] should be looked to when considering whether there was an enforceable promise to follow a specific policy."

 Because SVMC failed to clearly object to this jury instruction, the claim is not preserved on appeal. See *Weaver v. Georg Karl Geka Brush*, 166 Vt. 98, 106-07, 689 A.2d 439, 444-45 (1996) (where party failed to object distinctly, claim not preserved for appeal).

## C.

Similarly, SVMC contends that the court erred when it instructed the jury: "The Defendant asserts that it had just cause to terminate Plaintiff. Defendant has a burden of proving it had just cause for dismissing the Plaintiff." SVMC did not object to this instruction.

 SVMC failed to make a timely objection to the jury instruction, and, therefore, the claim is waived on appeal. See V.R.C.P. 51(b) (no error in giving instructions to the jury unless the party objects distinctly prior to jury consideration of issue); *Imported Car Center, Inc. v. Billings*, 163 Vt. 76, 80, 653 A.2d 765, 769 (1994) (failure of defendant to object to instruction precluded review by this Court).

---

[3] The law firm which represented the defendant before this Court on appeal did not act as trial counsel in superior court. The firm was retained for purposes of the appeal following the jury verdict.

## III.

SVMC contends that the court erred in excluding evidence of three supervisory reports relating to patient complaints, where the complaining patients refused to waive the confidentiality of their medical records.

The three specific complaints arose on October 6, 1991, March 9, 1992, and March 28, 1992. The October 6 complaint was lodged through a confidential letter with the complainant undisclosed, and alleged that "[t]he evening and daytime nursing care was terrible. My main complaint was with [plaintiff]." The March 9 complaint, lodged by a patient's daughter, involved an allegation that the mother had been fed too quickly by plaintiff. The March 28 complaint stated that a patient had "commented on [plaintiff's] mumbling under her breath while in [patient's] room."

Defense counsel offered to prove that: (1) on each occasion plaintiff was counseled by the nursing supervisor; (2) the written reports were placed in plaintiff's personnel file; (3) the nursing supervisor relayed the substance of the complaints to the other managers in the hospital involved in the termination; and (4) SVMC relied on the substance of these complaints as well as other reported problems in deciding to terminate plaintiff.

SVMC fails to demonstrate prejudicial error requiring reversal. Even though evidence relating to patient complaints for which waivers had not been obtained was ruled inadmissible, complaints of two of the three patients were ultimately admitted into evidence — the anonymous complaint of October 6, 1991 and the complaint on March 9, 1992.[4] The March 28 complaint pertaining to a patient "comment" about plaintiff's mumbling was the only incident of which the jury was unaware.

■ Even if the supervisory records should have been admitted, the exclusion was harmless error. The proffered records would have offered little to SVMC's case. SVMC introduced into evidence, through documents and testimony, multiple complaints of both nursing staff and patients. Plaintiff countered with testimony from supportive co-workers commending her nursing skills. Plaintiff also introduced testimony attacking the credibility of the complaints

---

[4] During the testimony of the nursing supervisor, the anonymous complaint of October 6 was introduced by plaintiff without objection by SVMC. The complaint of March 9 was introduced by SVMC over objection by plaintiff. Heaney testified as to the dangers involved when a patient is fed too aggressively, the basis of the complaint.

themselves and demonstrating SVMC's failure to follow the disciplinary procedures in place at the time of the termination. The jury failed to find that SVMC was justified in its termination of plaintiff, determining instead that SVMC had breached an implied contract with plaintiff in the "manner and means of discharge." We fail to see how the March 28 "mumbling" incident would have turned the case around for SVMC.

## IV.

SVMC next claims error in the admission of plaintiff's hearsay testimony about her conversation with a patient since deceased. SVMC's nursing supervisor testified to a complaint made by a patient's daughter that plaintiff fed her mother too aggressively and quickly. The nursing supervisor admitted that, although she did write up the complaint and discuss it with plaintiff, she could not remember whether she had ever discussed the complaint with the patient herself. In rebuttal, and over SVMC's objection, plaintiff testified that she later went to see the patient who told her she was upset that plaintiff had been reassigned because "she enjoyed my caring for her and I was the only one that gave her the hope to go on living."

If it was error to admit plaintiff's self-serving statement, we conclude that any error was harmless. Whether plaintiff was permitted to testify that one patient had professed confidence in plaintiff's nursing skills did not change the outcome of the trial. The jury did not address whether plaintiff was a substandard employee, concluding merely that defendant had substantially breached the contract of employment in the "manner and means of discharge." SVMC fails to demonstrate how the admission of plaintiff's statement into evidence was prejudicial to the outcome. See *Keus v. Brooks Drug, Inc.*, 163 Vt. 1, 7, 652 A.2d 475, 480 (1994) (even with error, Court will not reverse unless prejudice is demonstrated); *Cadel v. Sherburne Corp.*, 139 Vt. 134, 136, 425 A.2d 546, 547 (1980) (refusing to reverse where statement in question did not appear to be a significant factor in jury's determination).

## V.

Next, SVMC claims that the trial court erred in permitting the jury to consider the issue of front pay. At trial, over defendant's objection, plaintiff's sister testified that plaintiff had told her she hoped to retire at age sixty-two. At the close of evidence, defendant objected, arguing

that front pay was not an issue for the jury because plaintiff failed to introduce evidence during trial. The court, over SVMC's objection, instructed the jury to consider an award of front pay. SVMC did not object to front pay after the jury instructions were made.

We have determined that when front pay is allowed, damages must be "limited to a reasonable period of time," and must not be too "speculative." *Schnabel v. Nordic Toyota, Inc.*, 168 Vt. 354, 363, 721 A.2d 114, 121 (1998). The issue preserved on appeal is whether front pay damages are supported by the evidence introduced at trial. Plaintiff's evidence demonstrated that plaintiff was fifty-eight years old at the time of her termination and had been employed by SVMC for a period of twenty-five years. Plaintiff submitted front pay damages to the jury of $78,307 premised on her retirement at age sixty-two.

■ We fail to see how defendant was prejudiced by plaintiff's sister's testimony. Without it, the jury could have reasonably concluded plaintiff would have retired at age sixty-five. See *Haynes*, 166 Vt. at 238, 692 A.2d at 383 (jury award would be reasonable if based on normal retirement age of sixty-five, unless evidences demonstrated that plaintiff planned to work after age sixty-five). Because plaintiff was a long-term employee and the time to retirement was short, the front pay award was not speculative and was limited to a reasonable time period.

## VI.

Finally, SVMC claims that the court should have reduced the amount of back pay awarded because the evidence failed to support damages of $60,000. SVMC does not contend that plaintiff did not mitigate her damages with other employment, but argues that the only evidence relevant to back pay was $53,585, the total back pay damages presented during summation by plaintiff's counsel.

■ In determining a damages award, the jury award must stand if the verdict can be justified on any reasonable view of the evidence. See *Clement v. Woodstock Resort Corp.*, 165 Vt. 627, 629, 687 A.2d 886, 888 (1996) (mem.); see also *Jackson v. Rodgers*, 120 Vt. 138, 150, 134 A.2d 620, 627 (1957) (when no amount is set within contract, court may not interfere with jury award unless amount is shown to have been grossly insufficient or excessive).

At trial, plaintiff introduced into evidence her length of employment with SVMC, personal tax returns and W-2 forms from 1992

through 1996, employment positions obtained after her termination including length of time and hourly pay, and her year-to-date earnings for 1997 which consisted of $72. Furthermore, a nursing supervisor from SVMC testified that the hourly wages paid to similarly qualified LPNs at SVMC varied from $9.99 to $11.

In plaintiff's closing argument, two methods of ascertaining back pay were presented to the jury. One method calculated back pay to be $53,585 based upon plaintiff maintaining the same rate of pay from the time of her discharge until trial in early 1997. The alternative method assumed plaintiff received a raise in 1995 from $9.99 per hour to $11 per hour, excluded any earnings for 1997, and calculated damages of $59,171.

 We conclude that the jury award of $60,000 in back pay was not excessive. The evidence estimated plaintiff's lost wages at between $53,585 and $59,171. The second calculation did not include salary for the first six weeks of 1997, and plaintiff testified that her earnings for 1997 consisted of $72. The evidence was thus sufficient for the jury to determine that the total amount of back pay owed to plaintiff was $60,000. We find no error in the trial court's failure to reduce the back pay award.

*Affirmed.*